# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1129
_____

United States of America

*Plaintiff - Appellee*

v.

James L. Milliner

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: August 22, 2014
Filed: August 27, 2014
[Published]

_____

Before BENTON, MELLOY, and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

A jury convicted James Lee Milliner of conspiracy to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a) and 846. He appeals the conviction, challenging the sufficiency of the evidence and the denial of his motion to suppress wiretap evidence. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

In 2010 the Drug Enforcement Administration began investigating Charles E. McRoberts for trafficking crack cocaine. By late 2010, the government had a significant amount of information. Confidential sources said that McRoberts paid Michael B. Rogers to sell crack outside a "Pavilion" in Wright City, Missouri. When Rogers was incarcerated, Halesha C. Bradshaw took over the sales. A buyer of crack would call a number (telephone #1). McRoberts provided the crack to Rogers (later Bradshaw) in the morning, and in the evening, collected the money (and the remaining crack). The confidential sources said that some local police were being paid off to help the distribution.

In November 2010, the government applied for, and obtained, wiretap orders for the cellular telephones of the crack ring. During the 20-day existence of the first wiretap, defendant Milliner would watch for police near the Pavilion, and also picked up proceeds and remaining crack when McRoberts could not do it. At trial, the government played recorded calls corroborating Milliner's participation. Shortly after the government began wiretapping telephone #1, Bradshaw became nervous and quit. Every contact in telephone #1 was called and given a new number (telephone #4). Sales also moved from the Pavilion to an apartment complex. The government stopped intercepting calls from telephone #1 and got a wiretap authorization for telephone #4. Milliner was recorded on the wiretaps of telephone #4. In March 2011, police searched Milliner's apartment, where they found a digital scale, but no crack. Arrested, Milliner said he and McRoberts had nothing to do with the crack trafficking, but later admitted he held money for Bradshaw once, provided crack to another distributor once, and packaged crack once.

Milliner argues that the district court[1] should have suppressed evidence uncovered through wiretaps on telephone #1 and telephone #4 because they did not

---

[1]The Honorable Rodney W. Sippel, United States District Court Judge for the Eastern District of Missouri, adopting the memorandum and recommendation of the Honorable Terry I. Adelman, United States Magistrate Judge for the Eastern District of Missouri.

meet the "necessity" requirement in 18 U.S.C. § 2518(1)(c) and (3)(c). He claims the wiretaps were not necessary because the investigation had already revealed enough information, other investigative techniques were not too dangerous, and the authorized objectives of the investigation could never be accomplished through wiretaps. Regardless, Milliner claims that the evidence at trial was insufficient to support the verdict.

I.

"We review the denial of a motion to suppress de novo but review underlying factual determinations for clear error, giving due weight to the inferences of the district court and law enforcement officials." *United States v. Thompson*, 690 F.3d 977, 984 (8th Cir. 2012). Each wiretap application must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). Before granting a wiretap application, the court must find that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c). Whether the government made this showing of "necessity" is a factual finding, reviewed for clear error. *United States v. West*, 589 F.3d 936, 939 (2009).

"The necessity requirement of § 2518 insures 'that wiretaps are not routinely employed as the initial step in an investigation.'" *United States v. Jackson*, 345 F.3d 638, 644 (8th Cir. 2003), *quoting United States v. Thompson*, 210 F.3d 855, 859. (8th Cir. 2000). However, "[i]f law enforcement officers are able to establish that conventional investigatory techniques have not been successful in exposing the full extent of the conspiracy and the identity of each coconspirator, the necessity requirement is satisfied." *West*, 589 F.3d at 939, *quoting Jackson*, 345 F.3d at 644.

Milliner claims the government did not need the wiretaps because it already had enough information to prosecute members of the conspiracy. While there may have been enough evidence to prosecute some actors, there was not enough to effectively prosecute everyone involved. The wiretaps issued for telephones #1 and #4 were requested to shed light on the full scope of the crack conspiracy. The DEA agent's affidavit details the techniques attempted: surveillance, confidential sources, controlled purchases, trash seizures, electronic toll-record analysis, interviews with targets and witnesses, grand jury testimony, subpoenas of financial and tax information, review of police records, GPS devices, and a pole camera. Despite all these techniques, the government still did not know where McRoberts obtained the cocaine, how he laundered the proceeds from the sales, and where he stored the drugs or the proceeds. *See West*, 589 F.3d at 939 (finding the necessity requirement satisfied when "the government had obtained a significant amount of information about the extensive drug operation, [but] had not uncovered the sources of the cocaine in which he dealt").

Milliner asserts that other investigative techniques were not too dangerous. However, the affidavits said that McRoberts and his associates were armed, and local police were being paid to help them. This indicates that some investigative techniques were dangerous. Even if other investigative techniques were not dangerous, "Congress *prohibited* wiretapping only when normal investigative techniques are likely to succeed *and* are not too dangerous." *United States v. Daly*, 535 F.2d 434, 438 (8th Cir. 1976) (emphasis added). Here, some normal techniques were tried and failed (or were unlikely to succeed in the first place), so the non-dangerous nature of these techniques is irrelevant.

Finally, Milliner claims the authorized objectives of the wiretaps could never be attained because telephones #1 and #4 were mostly used to communicate with buyers. According to the wiretap affidavits, one objective was to determine if McRoberts himself was using a telephone. After intercepting calls from telephone #1,

police determined he was using yet another telephone (which McRoberts stopped using shortly after its wiretap was authorized). When the government applied for the wiretap on telephone #4, it still did not know what number McRoberts was using.[2] The district court did not clearly err in concluding that this particular objective could be obtained through the interception.

## II.

Milliner argues that the evidence was insufficient, as a matter of law, to establish that he knowingly agreed to join a conspiracy to distribute crack. "We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." *United States v. Miller*, 698 F.3d, 699, 702 (8th Cir. 2012). "To establish that a defendant conspired to distribute drugs under 21 U.S.C. § 846, the government must prove: (1) that there was a conspiracy, i.e., an agreement to distribute the drugs; (2) that the defendant knew of the conspiracy; and (3) that the defendant intentionally joined the conspiracy." *United States v. Polk*, 715 F.3d 238, 246 (8th Cir. 2013).

Rogers testified Milliner held the cocaine that he was responsible for selling. Milliner then sometimes replenished his supply. Rogers also testified that Milliner twice accompanied McRoberts and him to purchase powder cocaine. Bradshaw testified that McRoberts told her Milliner was "her eyes and ears" while she was distributing crack. If she ever needed anything checked on or did not feel safe, she was supposed to call Milliner and he would check things out. More than one witness testified—and Milliner himself admitted—that he packaged crack. During a search of Milliner's apartment, they found a scale in his kitchen (which matched the scale

---

[2]This point answers Milliner's argument that the government did not need the wiretap for telephone #4 (when analyzed separately from the authorization from telephone #1).

used in McRoberts's operation).  On several phone calls Milliner spoke "in code" about drug sales.  Although Milliner's role in the conspiracy changed over time, "it is not necessary that the participants or activities remain static throughout the duration of the conspiracy. . . . The jury must simply be able to find that there was . . . a common unlawful end." *United States v. Hill*, 410 F.3d 468, 471-72 (8th Cir. 2005).

Taking the facts most favorable to the verdict, the government presented sufficient evidence for a reasonable jury to conclude that Milliner knowingly joined in the conspiracy to distribute crack.

*******

The judgment is affirmed.

_____