# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-1368

_____

United States of America

*Plaintiff - Appellee*

v.

Marshaun Jordan Merrett, also known as Sheez

*Defendant - Appellant*

_____

No. 20-2081

_____

United States of America

*Plaintiff - Appellee*

v.

Johnnathan Monroe Frencher, also known as Ten

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: May 11, 2021
Filed: August 9, 2021
_____

Before SMITH, Chief Judge, SHEPHERD and GRASZ, Circuit Judges.
_____

SMITH, Chief Judge.

Marshaun Merrett and Johnnathan Frencher were members of a drug trafficking organization. Both were eventually arrested, convicted, and sentenced. On appeal, they challenge the substantive reasonableness of their sentences.[1] Frencher also argues that the district court[2] erred by denying his motion to suppress. We affirm the district court.

_____

[1]Additionally, Merrett and Frencher both received four-level sentencing enhancements under U.S.S.G. § 2K2.1(b)(6)(B) via Iowa Code § 724.4(1) (2020). They urge us to revisit our decision in *United States v. Walker*, where we held that § 724.4(1) counts as "another felony offense" under § 2K2.1(b)(6)(B). 771 F.3d 449, 451–53 (8th Cir. 2014). We decline the invitation. *Walker* is controlling until it is "repudiated or undermined by later authority, such as a statute, an intervening Supreme Court decision, or en banc decision." *Dean v. Searcey*, 893 F.3d 504, 511 (8th Cir. 2018) (quoting Bryan A. Garner et al., *The Law of Judicial Precedent* 38 (West 2016)). We note that in April 2021, Iowa amended § 724.4. The new language became effective at the beginning of July. *See* Iowa Code § 3.7(1). We need not address in this case how the new statutory language affects *Walker*. This is because the relevant statutory text for determining whether an offense is "another felony offense" is the text in effect when the defendant committed the conduct. *See* U.S.S.G. § 2K2.1(b)(6)(B) (placing the locus on the moment that the defendant "used or possessed any firearm or ammunition in connection with another felony offense").

[2]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

-2-

## I. *Frencher*

### A. *Background*

The Federal Bureau of Investigation (FBI) made five controlled drug buys from Frencher while investigating the drug trafficking organization that Merrett and Frencher had joined. To complete the controlled buys, the FBI directed a confidential source (CS). The CS had previously obtained a cellphone number to contact Frencher for drug purchases. For three of the controlled buys, the CS contacted Frencher using that cellphone number.

When the FBI's investigation into the drug trafficking organization failed to expose the full extent of its operations, the FBI applied for a wiretap on a phone that Frencher allegedly used. In early December 2018, a federal district court authorized use of the wiretap.

Within a couple of weeks, the FBI intercepted text messages between Frencher and his brother, Freddie. Freddie messaged Frencher that Freddie had information about a potential burglary. Almost instantly, Frencher called Freddie to discuss the proposed crime. The conversation between the brothers and an unidentified man included specifics about the intended victim, the layout and entry points of his house, his schedule and when he would be home, whether he owned weapons to protect himself, and the loot that could be obtained. They also discussed their readiness to attempt the crime that same night, but Frencher lamented that he could not immediately go because he did not have a car.

The FBI and the Des Moines Police Department promptly began surveilling Frencher's apartment in an unmarked vehicle. About two hours after the call, law-enforcement officers observed an SUV arrive at the apartment. Frencher and Freddie approached the SUV and entered the passenger side. When the SUV pulled away, the officers tailed it. Although both the SUV and the unmarked law-enforcement vehicle

had their windows rolled up, an officer commented that he could smell marijuana coming from the SUV.

Eventually, different officers in a marked patrol car began following the SUV. The officers in the patrol car had been briefed on the communications between Frencher and Freddie and the potential marijuana smell. When the patrol car pulled behind the SUV, one of those officers also commented that she smelled marijuana. The officers in the patrol car then initiated a traffic stop. The marijuana smell did not dissipate. After running the driver's license and registration, the officers arrested the SUV's three occupants. The officers then searched the SUV. Under Frencher's and Freddie's seats, they found two loaded handguns with a total of 26 rounds of ammunition.

Additionally, when a backup officer arrived at the scene, he also smelled a strong marijuana odor. The vehicle search uncovered no marijuana.

During the criminal proceedings against Frencher, he moved to suppress the evidence obtained during the traffic stop, arguing that the wiretap was improper, the officers did not have reasonable suspicion to effect a traffic stop, and the officers did not have probable cause to search the SUV. The district court denied Frencher's motion to suppress.

Frencher pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and to distributing cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). The district court calculated Frencher's offense level as 25 and his criminal history category as V. The Guidelines range was 100 to 125 months' imprisonment, though the statutory maximum was 120 months' imprisonment. The district court sentenced Frencher to 110 months' imprisonment. Frencher appeals the district court's denial of his motion to suppress and the reasonableness of his sentence.

B. *Denial of the Motion to Suppress*

"We review the denial of [a] motion to suppress under a mixed standard of review. We review the district court's findings of fact under the clearly erroneous standard, and the ultimate conclusion of whether the Fourth Amendment was violated is subject to de novo review." *United States v. Holly*, 983 F.3d 361, 363 (8th Cir. 2020) (emphasis omitted) (cleaned up). Frencher launches a three-pronged attack against the validity of the search, arguing that (1) the approval of the wiretap application was erroneous, (2) the officers did not have reasonable suspicion to initiate the traffic stop, and (3) the officers did not have probable cause to search the SUV.

1. *Wiretap Authorization*

To obtain a wiretap, the government must establish the following four requirements:

(a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in [18 U.S.C. § 2516];

(b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;

(c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;

(d) . . . there is probable cause for belief that the facilities from which, or the place where, the wire, oral, or electronic communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person.

18 U.S.C. § 2518(3). Frencher argues that the requirements in subsections (c) and (d) were not met.

## a. *Necessity*

Subsection (c) requires a finding of necessity for the wiretap. We review the district court's fact finding for clear error. *United States v. Campbell*, 986 F.3d 782, 793 (8th Cir. 2021). Under clear-error review, we affirm unless (1) substantial evidence does not support the district court's necessity determination, (2) the determination "evolve[d] from an erroneous view of the applicable law," or (3) we, after reviewing the whole record, have a definite and firm conviction that the district court made a mistake. *United States v. O'Connell*, 841 F.2d 1408, 1414 (8th Cir. 1988).

To meet the necessity requirement, law enforcement must "establish that conventional investigatory techniques have not been successful in exposing the full extent of the conspiracy and the identity of each coconspirator." *Campbell*, 986 F.3d at 793 (quoting *United States v. Turner*, 781 F.3d 374, 382 (8th Cir. 2015)). "But the necessity requirement does not require the government to exhaust every available investigative technique," *United States v. Terrell*, 912 F.3d 1125, 1129 (8th Cir. 2019), or "to use a wiretap only as a last resort." *United States v. Perez-Trevino*, 891 F.3d 359, 370 (8th Cir. 2018) (quoting *United States v. Macklin*, 902 F.2d 1320, 1327 (8th Cir. 1990)).

The wiretap application in this case included a lengthy affidavit. The affidavit detailed multiple investigative techniques that law enforcement had used and explained why those techniques were unsuccessful in exposing the full extent of the drug trafficking organization. It also listed unused techniques and said why those techniques would have been ineffective or dangerous. For example, the affidavit discussed the limited utility of using a CS and conducting controlled drug buys, the fearful reticence of interviewees related to the organization, the perils of going to a grand jury before having more complete information, the risks and limited success of using physical surveillance and undercover agents, and the frequent futility of trash searches. And it also explained that law enforcement had been unable to discover the

drug trafficking organization's sources, storage locations, and some of the high-ranking members within the organization's structure. The detailed affidavit provided ample information to meet the necessity requirement. *See United States v. Milliner*, 765 F.3d 836, 840 (8th Cir. 2014) (per curiam) ("Despite all these techniques, the government still did not know where [the defendant] obtained the cocaine, how he laundered the proceeds from the sales, and where he stored the drugs or the proceeds."); *United States v. West*, 589 F.3d 936, 939 (8th Cir. 2009) (finding that the necessity requirement was met where "the government had obtained a significant amount of information about the extensive drug operation in which [the defendant] was a primary player" but "had not uncovered the sources of the cocaine in which he dealt"). There was no clear error.

b. *Probable Cause That the Cellphone Was Connected to Crime*

Frencher urges that the government failed to establish subsection (d) because its wiretap application "failed to establish probable cause that the phone number to be intercepted . . . was listed in the name of Frencher or commonly used by him." Frencher's Br. at 14. This argument, however, is unsupported by the record and ignores that subsection (d) may be met in either of two ways.

Subsection (d) requires "probable cause for belief that the facilities" are *either* (1) "used, or are about to be used, in connection with the commission of [certain criminal offenses]" *or* (2) "leased to, listed in the name of, or commonly used by [the suspect]." 18 U.S.C. § 2518(3)(d); *see, e.g.*, *United States v. Donovan*, 429 U.S. 413, 435 (1977) (paraphrasing subsection (d) as requiring "probable cause to believe that . . . the target facilities are being used in connection with the specified criminal activity"); *United States v. Giacalone*, 853 F.2d 470, 480 (6th Cir. 1988) (stating that subsection (d) requires "probable cause to believe . . . that the telephones to be monitored were either being used in connection with the criminal activity or were commonly used by the suspects"). This probable-cause requirement is coextensive with the Fourth Amendment's probable-cause requirement. *United States v. Gaines*,

639 F.3d 423, 430 (8th Cir. 2011). Thus, the government had to show, when considering the totality of the circumstances, that there was a fair probability that the cellphone was used or was about to be used for criminal activities or that Frencher, a person engaged in proscribed conduct, commonly used the cellphone. *United States v. Hager*, 710 F.3d 830, 836 (8th Cir. 2013).

The government met its burden. The CS performed three controlled buys by communicating with the cellphone number that was wiretapped. Further, the CS identified the number as Frencher's, and Frencher was the person who facilitated the controlled buys through the number. Therefore, probable cause existed to meet subsection (d).

## 2. *The Traffic Stop*

Next, Frencher challenges the traffic stop. Law-enforcement officers may effect a traffic stop if they have reasonable suspicion of criminal activity. *United States v. Mosley*, 878 F.3d 246, 251 (8th Cir. 2017). "Reasonable suspicion exists when an officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed," "based on the totality of the circumstances." *Id.* (quoting *United States v. Givens*, 763 F.3d 987, 989 (8th Cir. 2014)). This must be more than an "inchoate hunch," but officers need only be able to "articulate some minimal, objective justification for an investigatory stop." *Id.* (quoting *United States v. Tamayo-Baez*, 820 F.3d 308, 312 (8th Cir. 2016)).

There was reasonable suspicion for the officers to stop the SUV that carried Frencher. Just before Frencher and Freddie entered the SUV, they conversed with an unidentified man concerning the details of a proposed, imminent burglary. During the conversation, Frencher said that the only thing stopping him was that he did not have a car to get to the proposed house. Less than two hours later, an SUV arrived to pick up Frencher and Freddie. These facts and the reasonable inference that the brothers

now had the transportation they needed provided law enforcement reasonable suspicion that the occupants in the SUV were on their way to commit a burglary.

Frencher also challenges the duration of the stop. He states that "the stop exceeded the constraints" established in *Rodriguez v. United States*, 575 U.S. 348 (2015), when it "escalated into detention, handcuffing of all occupants of the [SUV], interviews of all in the [SUV], and the ultimate warrantless search of the [SUV]." Frencher's Br. at 28. "An investigative stop must cease once reasonable suspicion or probable cause dissipates." *Mosley*, 878 F.3d at 253 (cleaned up). If the stop "exceed[s] the time needed to handle the matter for which the stop was made," the duration of the stop violates the Fourth Amendment. *Id.* (quoting *Rodriguez*, 575 U.S. at 350).

The constitutionality of the duration "is determined by the seizure's 'mission.'" *Id.* (quoting *Rodriguez*, 575 U.S. at 354). Here, law enforcement's mission was twofold. Initially, the officers were investigating whether Frencher and the other occupants of the SUV were on their way to commit a burglary. After the stop began, this mission expanded to determine whether the occupants were illegally possessing and using marijuana that multiple officers at the scene of the stop smelled, which provided probable cause. *See United States v. Smith*, 789 F.3d 923, 928 (8th Cir. 2015) (stating that "[t]he Supreme Court has recognized that the odor of an illegal drug can be highly probative in establishing probable cause for a search" and finding that the smell of marijuana provided probable cause (quoting *United States v. Caves*, 890 F.2d 87, 90 (8th Cir. 1989))). All of the officers' actions were aimed at these two objectives. On these facts, the duration of the stop was not unreasonably extended.

### 3. *The SUV Search*

Further, Frencher claims that the officers did not have probable cause to search the SUV. The government argues that Frencher lacks standing to challenge the search.

The district court did not address the issue. Assuming without deciding that Frencher had standing, he cannot show that the search was unconstitutional. The Fourth Amendment requires law-enforcement officers to obtain a warrant before initiating a search, but "[d]uring a lawful investigatory [traffic] stop, officers may search a vehicle [without a warrant] when they develop probable cause to believe it contains contraband or evidence of criminal activity." *United States v. Williams*, 955 F.3d 734, 737 (8th Cir. 2020). During this traffic stop, officers smelled marijuana emanating from the SUV. And "[w]e have repeatedly held that the odor of marijuana provides probable cause for a warrantless search of a vehicle under the automobile exception." *Id.* Thus, the officers' search of the SUV did not violate Frencher's Fourth Amendment rights.

## C. *Sentence's Substantive Reasonableness*

Frencher does not allege that the district court committed procedural error, but he does challenge the substantive reasonableness of his sentence. We review the substantive reasonableness of a sentence for an abuse of discretion. *United States v. Davis*, 859 F.3d 572, 574 (8th Cir. 2017). The district court abuses its discretion if it "fails to consider a relevant factor which should have received significant weight; gives significant weight to an improper or irrelevant factor; or considers the appropriate factors but commits a clear error of judgment." *Id.* (quoting *United States v. Edwards*, 820 F.3d 362, 366 (8th Cir. 2016)). "A within-Guidelines sentence," like Frencher's 110 months' imprisonment, "is presumed reasonable." *United States v. Williams*, 913 F.3d 1115, 1116 (8th Cir. 2019) (per curiam). Frencher argues that the district court improperly weighed the sentencing factors in 18 U.S.C. § 3553(a).

Here, the district court considered and weighed the § 3553(a) factors: It "recited the factors, heard extensive argument of counsel, and explained its chosen sentence." *United States v. Jones*, 669 F. App'x 811, 812 (8th Cir. 2016) (unpublished per curiam) (citing *Rita v. United States*, 551 U.S. 338, 359 (2007)). Further, the district court explicitly acknowledged almost all of the mitigating factors that Frencher raises

-10-

on appeal, including Frencher's difficult childhood, his children, and his future education and employment goals. Frencher simply disagrees with how the district court weighed those factors. But based on a review of the record, we cannot say that the district court committed a clear error of judgment in weighing the § 3553(a) factors. It instead used its "wide latitude to weigh the § 3553(a) factors . . . and assign[ed] some factors greater weight than others." *United States v. Stephen*, 984 F.3d 625, 633 (8th Cir. 2021) (quoting *United States v. Bridges*, 569 F.3d 374, 379 (8th Cir. 2009)). Frencher's sentence is substantively reasonable.

## II. *Merrett*
### A. *Background*

Unrelated to Frencher's stop, in December 2018, Des Moines Police Department officers conducted a lawful traffic stop of the car that Merrett was driving. During the stop, officers smelled marijuana, so they searched Merrett's car. The search produced a baggie of marijuana and a loaded handgun with 31 rounds of ammunition. A few days after the search, Merrett and some companions armed with guns went to a liquor store at 1:30 a.m. There, they encountered another armed group. A shootout between the two groups ensued, and security video showed Merrett with a handgun at the ready.

Merrett pleaded guilty to being a felon in possession of ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), as a result of the ammunition found during the traffic stop. At sentencing, the district court calculated Merrett's offense level as 23 and his criminal history category as V. The Guidelines range was 84 to 105 months' imprisonment. The district court sentenced Merrett to 105 months' imprisonment. Merrett appeals the reasonableness of his sentence.

### B. *Sentence's Substantive Reasonableness*

Merrett does not claim that the district court committed any procedural error while sentencing him, only that his sentence was substantively unreasonable. We

review Merrett's substantive-reasonableness challenge for an abuse of discretion, as we did Frencher's. *See Davis*, 859 F.3d at 574. Merrett argues that the district court improperly weighed the § 3553(a) factors in sentencing him to 105 months' imprisonment, a within-Guidelines sentence. Merrett contends the district court made four errors in arriving at its sentence: (1) imposing a 105-month sentence that was "greater than necessary," under § 3553(a), because of the suspect precedent in *Walker*, (2) giving too little consideration to his upbringing and addiction to drugs, (3) valuing punishment more greatly than drug treatment, and (4) failing to consider the disparity in sentence length between his and his codefendants' sentences.

The district court did not err in weighing these considerations. To begin, the district court's sentence was not greater than necessary. The district court properly applied *Walker*, the existing precedent. Even so, the district court explained that 105 months' imprisonment was "the same sentence that [it] would impose without the *Walker* adjustment because of . . . the nature and circumstances of the offense and . . . the subsequent possession of a firearm . . . mere days after th[e] offense of conviction." Sentencing Tr. at 37, *United States v. Merrett*, No. 4:19-cr-00061-RGE-SHL-3 (S.D. Iowa 2020), ECF No. 727; *cf. United States v. Halter*, 988 F.3d 1042, 1047 (8th Cir. 2021) (finding a sentence substantively reasonable over the defendant's argument that *Walker* created unwarranted sentencing disparities); *United States v. McGrew*, 846 F.3d 277, 280 (8th Cir. 2017) (explaining that alleged procedural errors are harmless "if it is clear from the record that the district court would have given the defendant the same sentence regardless of which guidelines range applied" (citation omitted)).

Next, the district court acknowledged "the disadvantaged nature of [Merrett's] upbringing and the challenges that he faced, his early onset of use of controlled substances, and lack of youthful guidance and supervision." Sentencing Tr. at 34. But these mitigating facts were counter balanced by Merrett's refusal to take advantage of

opportunities that were available to him to avoid criminal conduct. This was an appropriate consideration.

Further, contrary to Merrett's assertions, the district court did not overlook treatment and rehabilitation. For example, as a special condition of supervised release, Merrett will "be required to participate in a program of testing or treatment for substance abuse" and "restricted from the use of alcohol or any other intoxicants in furtherance of [his] substance abuse treatment." *Id.* at 39. The district court did not abuse its discretion by not giving even greater consideration to Merrett's addictions, especially considering the multiple aggravating factors present. *Cf. United States v. Plaza*, 471 F.3d 876, 879 (8th Cir. 2006) ("Drug addiction or abuse is not a proper reason to impose a downward variance, absent exceptional circumstances." (quoting *United States v. Lee*, 454 F.3d 836, 839 (8th Cir. 2006))).

Finally, the district court considered the need to avoid unwarranted sentencing disparities. Merrett's argument here focuses on the differences between his sentence and those of some of his codefendants, but we have explained that "the statutory direction to avoid unwarranted sentence disparities, *see* 18 U.S.C. § 3553(a)(6), refers to *national* disparities, not differences among co-conspirators." *United States v. Baez*, 983 F.3d 1029, 1044 (8th Cir. 2020) (quoting *United States v. Fry*, 792 F.3d 884, 892 (8th Cir. 2015)). In our circuit, "relief based on a comparison [to] co-conspirators" is an "unusual circumstance" where there must be both (1) "an 'extreme disparity' . . . between similarly situated conspirators" and (2) "a consolidated appeal involving both conspirators that permit[s] a remand for resentencing of both parties." *Fry*, 792 F.3d at 892–93.

First, Merrett compares his sentence to Frencher's sentence and three other codefendants who are not part of this appeal. "But when one defendant asserts on appeal that similarly situated co-conspirators [who did not appeal] were sentenced differently in different proceedings, and all sentences are within the range of

reasonableness, 'there is no principled basis for an appellate court to say which defendant received the "appropriate" sentence.'" *United States v. Nshanian*, 821 F.3d 1013, 1019 (8th Cir. 2016) (quoting *Fry*, 792 F.3d at 892–93). So we limit our review to a comparison with Frencher, the only defendant consolidated with Merrett.

Second, Merrett's Guidelines calculations was similar to Frencher's. Both had a criminal history category of V. Merrett's offense level was 23, and Frencher's offense level was 25. Likewise, the district court considered both to have engaged in egregious conduct. Thus, Merrett and Frencher were similarly situated. But their sentences were not "extremely dispar[ate]." *Fry*, 792 F.3d at 892. There is only a difference of five months between Merrett's and Frencher's sentences. And, Merrett received five fewer months than Frencher's 110 months' imprisonment.

We conclude that the district court did not clearly err in weighing the § 3553(a) factors.

## III. *Conclusion*

We affirm the district court's denial of Frencher's motion to suppress, the substantive reasonableness of both Merrett's and Frencher's sentences, and the application of § 2K2.1(b)(6)(B).

_____