# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-2567

_____

United States of America

*Plaintiff - Appellee*

v.

Hector Ramon Iglesias-Tovar

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: April 12, 2022
Filed: August 15, 2022
[Unpublished]

_____

Before COLLOTON, MELLOY, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

Hector Ramon Iglesias-Tovar ("Iglesias"), an undocumented immigrant, was indicted by a grand jury on multiple drug-related charges. He pleaded guilty to some charges and left two charges for trial. The jury found him guilty of both remaining charges, and he was sentenced to 228 months' imprisonment. Iglesias appeals,

challenging the *voir dire* conducted by the district court[1] and the substantive reasonableness of his sentence.  We affirm.

We begin with Iglesias's claim that the district court conducted a *voir dire* that deprived him of his Sixth Amendment right to a fair and impartial jury.  "[T]he adequacy of *voir dire* is not easily subject to appellate review."  *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981).  "We review whether the district judge conducted voir dire in a way that protected a defendant's Sixth Amendment right . . . for an abuse of discretion."  *United States v. Young*, 6 F.4th 804, 807-08 (8th Cir. 2021) (internal quotation marks and brackets omitted).  Abuse-of-discretion review "is necessary because the district court is in the best position to evaluate potential biases against a defendant."  *Id*. at 808 (internal quotation marks omitted).  "The district court abuses its discretion when the overall examination of the prospective jurors and the charge to the jury fails to protect the defendant from prejudice or fails to allow the defense to intelligently use its peremptory challenges."  *Id*.  The Government contends that, because Iglesias did not object during *voir dire*, this court should review some of Iglesias's arguments for plain error.  We need not decide the question whether Iglesias properly objected as Iglesias's arguments all fail under the more favorable abuse-of-discretion standard for which he argues.

First, Iglesias argues that the district court abused its discretion when it stated, "[I]f the Government finishes their strikes, and, you know, you're happy with this pool—I've always said that you can pretty much give me any 12 Iowans and we're going to have a very fair trial once you get rid of the strikes for cause."  According to Iglesias, the district court's comment was an assumption that has been disproven by the racial disparities in Iowa prisons.  The district court did not abuse its discretion.  Its comment was made outside the presence of the prospective jurors and in response to a question about juror strikes.  Because the comment was not made in their presence, the district court's comment did not influence the prospective jurors.

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

*See Hale v. Firestone Tire & Rubber Co.*, 756 F.2d 1322, 1330 (8th Cir. 1985) (acknowledging that comments made by the district court outside the presence of the jury do "not affect the jury"). Further, there is no indication that the comment was made to influence the parties to decline exercising peremptory strikes; Iglesias, in fact, exercised all of his. We thus conclude that the district court did not abuse its discretion. *See United States v. Davis*, 785 F.2d 610, 617 (8th Cir. 1986) (stating that "isolated comments" made by the district court outside the presence of the jury were "simply . . . not sufficient to show trial prejudice")*; United States v. Hill*, 643 F.3d 807, 845 (11th Cir. 2011) (stating that comments made outside the presence of the jury cannot provide the basis for reversal).

Second, Iglesias argues that the district court abused its discretion by attempting to rehabilitate two prospective jurors. Juror Number 6 indicated her family connections to law enforcement would cause her to favor the Government; in response to follow-up questions from the district court, Juror Number 6 did not amend her initial response. Juror Number 26 agreed that "a defendant should have to put on a defense." The district court asked clarifying questions, and Juror Number 26 later stated that defendants are not required to present evidence in order to be found not guilty. District court judges routinely ask follow-up questions to discern whether a juror is actually biased. *See United States v. Farrington*, --- F.4th ---, 2022 WL 3024690, at *3 (8th Cir. Aug. 1, 2022) ("Essentially, . . . a juror must profess his inability to be impartial and resist any attempt to rehabilitate his position for a party to show actual partiality." (internal quotation marks omitted)). We see nothing inherently wrong with this practice. In any event, neither prospective juror ultimately served on the jury. Juror Number 6 was removed upon Iglesias's motion to strike for cause and Juror Number 26 served as an alternate juror who did not participate in deliberation. Therefore, we find no abuse of discretion in the district court's attempt to rehabilitate Jurors Number 6 and 26. *See United States v. Ortiz,* 315 F.3d 873, 892 (8th Cir. 2002) (stating that no abuse of discretion occurred where potentially biased prospective jurors did not ultimately sit on the jury); *United States v. Paul*, 217 F.3d 989, 1004 (8th Cir. 2000) (affirming the district court's denial of challenges for cause "because those jurors did not end up sitting on the jury").

Third, Iglesias argues that the district court abused its discretion by failing to ask the prospective jurors about their "opinions, beliefs, or experiences with 'immigrants,'" claiming that its "admonition that the case was not about immigration policy" stifled further discussion. The district court did not abuse its discretion. Although it noted the Government's allegation that Iglesias was in the United States illegally, it reminded the prospective jurors that the trial was not about immigration laws or policy. The district court then asked the prospective jurors if they had strong feelings about immigration law or policy that would prevent them from following the court's instructions in the case, and no juror indicated any bias. This inquiry into the prospective jurors' potential bias was sufficient. *See United States v. Hilario-Hilario*, 529 F.3d 65, 72 (1st Cir. 2008) (concluding that the district court conducted a "thorough and searching voir dire" when it asked if the jurors had feelings about illegal immigrants "that would impair the[ir] ability to come to a fair, impartial, and just decision"); *United States v. Murry*, 31 F.4th 1274, 1289 (10th Cir. 2022) ("That immigration sometimes implicates race or ethnicity does not make all immigration cases inextricably bound up with race.").

Fourth, Iglesias argues that the district court abused its discretion when it disallowed defense counsel's explanation of the concept of reasonable doubt through the use of an analogy. The analogy involved news reports about tampered-with Tylenol bottles, and defense counsel noted that someone might doubt whether or not the Tylenol in their own medicine cabinet is safe. The district court prevented defense counsel from discussing the Tylenol analogy during *voir dire*, reasoning that the district court had already explained the reasonable doubt standard to the prospective jurors. We agree with the district court. There is no abuse of discretion where a district court limits the defendant's explanation relating to the burden of proof when the district court has sufficiently instructed the jury on the concept. *See United States v. Benson*, 760 F.2d 862, 864 (8th Cir. 1985) (holding that a district court acted within its discretion in rejecting specific questions to prospective jurors proposed by the defendant); *United States v. Daniel*, 887 F.3d 350, 359 (8th Cir. 2018) ("A district court has broad discretion in instructing the jury. . . ."). Here, the district court provided the prospective jurors with an explanation of the

Government's burden of proof and read Eighth Circuit model jury instruction 3.11 to the prospective jurors. *See Eighth Circuit Manual of Model Jury Instructions* (*Criminal*) 3.11 (2021). It asked the prospective jurors if they could apply the burden of proof in the case, and they answered affirmatively. It is the role of the district court, not the parties, to explain the concept of "beyond a reasonable doubt." *United States v. Drew*, 894 F.2d 965, 969 (8th Cir. 1990) ("[P]rosecutors would be well advised to avoid trying to explain to the jury the meaning of 'beyond a reasonable doubt' (this is a function properly performed only by the trial judge). . . ."). Therefore, the district court did not abuse its discretion when it rejected defense counsel's use of the Tylenol analogy during *voir dire* to describe the concept of burden of proof beyond a reasonable doubt. *See Benson*, 760 F.2d at 864.

Finally, Iglesias argues that the district court abused its discretion when it disallowed defense counsel's question about whether the prospective jurors wanted to serve on the jury. Outside the presence of the prospective jurors, the district court explained that it had prohibited defense counsel's line of questioning because it was irrelevant to determining impartiality. According to Iglesias, the district court's actions resulted in the *voir dire* being unlikely to uncover bias. The Supreme Court has "stressed the wide discretion granted to the trial court in conducting *voir dire*" in "areas of inquiry that might tend to show juror bias." *Mu'Min v. Virginia*, 500 U.S. 415, 427 (1991); *see also Ham v. South Carolina*, 409 U.S. 524, 528 (1973) (noting the "traditionally broad discretion accorded to the trial judge in conducting voir dire"). Based on this discretion, as well as the fact that willingness to serve as a juror does not indicate partiality or impartiality, *cf. Wilson v. Cockrell*, 70 F. App'x 219, 225 (5th Cir. 2003) (per curiam) (listing "fulfill[ing] civic duties" as a potential reason for wanting to serve on a jury), we conclude that the district court did not abuse its discretion in prohibiting inquiry about the prospective jurors' desire to serve on the jury. *See Beuke v. Houk*, 537 F.3d 618, 637 (6th Cir. 2008) (concluding that the district court's prohibition of counsel's inquiry about why jurors wanted to serve did not result in a "fundamentally unfair" trial).

This is not to say that *voir dire* may be limited strictly to questions that might reveal partiality and a basis to strike a prospective juror for cause. *Voir dire* must be sufficient "to allow the defense to intelligently use its p[er]emptory challenges." *United States v. Granados*, 117 F.3d 1089, 1092 (8th Cir. 1997); *see* Fed. R. Crim. P. 24(b). But whether a prospective juror wants to serve on the jury is not the sort of information that is essential to an enlightened exercise of peremptory challenges, and not every potentially useful question must be permitted. Iglesias has not argued or demonstrated that the overall *voir dire* process in this case was unduly circumscribed.

We next address Iglesias's challenge to the substantive reasonableness of his sentence, which we review for an abuse of discretion. *See United States v. Petersen*, 22 F.4th 805, 807 (8th Cir. 2022). "A sentence within the guideline range is presumed to be reasonable." *United States v. Bryant*, 446 F.3d 1317, 1319 (8th Cir. 2006). "[W]hen the sentence is below the Guidelines range, it is nearly inconceivable that the court abused its discretion in not varying downward still further." *United States v. Gifford*, 991 F.3d 944, 947 (8th Cir. 2021) (internal quotation marks omitted). "It is [the defendant's] burden to overcome these presumptions." *Id.*

Iglesias argues that the district court should have varied downward further than it did. His 228-month sentence reflects a 20-month downward variance from the guidelines range. The variance took into account "[Iglesias's] positive performance while being detained, his acceptance of responsibility on the drug counts, [and] his total lack of criminal history." The district court "recognize[d its] authority to vary downward further to the mandatory minimums," but still found the 228-month sentence to be "sufficient but not greater than necessary to serve the purposes of sentencing." *See Gifford*, 991 F.3d at 947.

After reviewing the record, we cannot say that the district court abused its discretion by not varying downward further. *See id.* It "used its wide latitude to weigh the § 3553(a) factors . . . and assigned some factors greater weight than

-6-

others." *United States v. Merrett*, 8 F.4th 743, 752 (8th Cir. 2021) (internal quotation marks and brackets omitted). Iglesias's sentence is substantively reasonable. *See Gifford*, 991 F.3d at 947.

Iglesias also argues against the policy of the sentencing guidelines with respect to certain methamphetamine offenses. The district court recognized its ability to vary from the guidelines because of a policy disagreement with the treatment of actual or ice methamphetamine, but it declined to do so. *See* U.S.S.G. § 2D1.1(c), Drug Quantity Table n.C. The district court did not abuse its discretion by choosing not to vary based on a policy reason. *See United States v. Heim*, 941 F.3d 338, 340-41 (8th Cir. 2019).

For the foregoing reasons, we affirm the judgment of the district court.

_____