# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 23-1522

———————————————

United States of America

*Plaintiff - Appellee*

v.

Kaycee Heard, also known as Kaycee Ballhard, also known as Juan

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the District of North Dakota - Western

——————————

Submitted: December 11, 2023
Filed: February 6, 2024

——————————

Before GRUENDER, GRASZ, and KOBES, Circuit Judges.

——————————

KOBES, Circuit Judge.

Kaycee Heard was part of a drug-trafficking conspiracy that transported thousands of oxycodone and fentanyl pills from Michigan to North Dakota for distribution. After the Government charged him and dozens of others in connection with the conspiracy, he pleaded guilty to conspiring to distribute and possess with intent to distribute controlled substances, 21 U.S.C. §§ 841(a)(1), (b)(1)(B), 846.

The district court[1] varied up from his Guidelines range of 135 to 168 months in prison and sentenced him to 180 months. Heard appeals, and we affirm.

## I.

Heard attacks his sentence on several fronts.[2] He claims first that the district court erred in calculating his criminal history score by giving him one point for the two-year probation term he served after pleading guilty to Michigan offenses. He argues next that the court clearly erred by applying a Guidelines enhancement for his role in the conspiracy. Finally, he says that his sentence is unreasonable. We address each challenge in turn.

## A.

The district court assessed a criminal history point for the two-year probation term Heard served under Michigan's Holmes Youthful Trainee Act. Heard says that this sentence shouldn't have counted toward his criminal history score because no conviction was entered and the underlying charges were dismissed. *See* Mich. Comp. Laws § 762.11(1) (stating that the court may assign a young adult the status of youthful trainee "without entering a judgment of conviction" after he "pleads guilty to a criminal offense"); *id.* § 762.14(1) (stating that the proceedings are dismissed upon successful completion of the program).

We review the district court's construction of the criminal history Guidelines *de novo* and its application of those Guidelines to the facts for clear error. *United States v. Hamilton*, 950 F.3d 567, 569 (8th Cir. 2020).

---

[1]The Honorable Daniel M. Traynor, United States District Judge for the District of North Dakota.

[2]The Government argues that some of these challenges are barred by Heard's appeal waiver, but we affirm on the merits.

District courts calculate a defendant's criminal history score generally by assessing points for prior sentences. *See* U.S.S.G. § 4A1.1. A "prior sentence" is "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere*, for conduct not part of the instant offense." *Id.* § 4A1.2(a)(1). A "[d]iversion from the judicial process without a finding of guilt (*e.g.*, deferred prosecution) is not counted." *Id.* § 4A1.2(f). But a "diversionary disposition resulting from a finding or admission of guilt" is counted "even if a conviction is not formally entered." *Id.*; *see also id.* § 4A1.1 cmt. n.3 ("A diversionary disposition is counted only where there is a finding or admission of guilt in a judicial proceeding.").

Although no conviction was entered and Heard's Michigan case was ultimately dismissed, what matters is that he admitted guilt by pleading guilty.[3] *See id.* § 4A1.2(f); *id.* § 4A1.1 cmt. n.3. Because the Michigan court imposed the probation term based on his admission of guilt, the district court properly assessed one point for that "prior sentence." *See United States v. Shor*, 549 F.3d 1075, 1076–78 (6th Cir. 2008) (holding that a sentence of probation imposed after a guilty plea under the Holmes Youthful Trainee Act counts as a "prior sentence").

B.

The district court applied a three-level enhancement for Heard's role in the conspiracy. Under U.S.S.G. § 3B1.1(b), a court adds three offense levels when "the defendant was a manager or supervisor . . . and the criminal activity involved five or more participants or was otherwise extensive." Heard argues that the district court clearly erred by finding that he was a manager or supervisor. *See United States v. Guzman*, 946 F.3d 1004, 1007–08 (8th Cir. 2020) (standard of review).

---

[3]The Presentence Report says that Heard pleaded guilty to the Michigan offenses, and he did not contest that fact below. So he has admitted it. *See United States v. Stowell*, 82 F.4th 607, 610 n.2 (8th Cir. 2023) (en banc).

We construe the terms "manager" and "supervisor" liberally, affirming the enhancement even when the defendant managed or supervised only one other participant during a single transaction. *See United States v. Valencia*, 829 F.3d 1007, 1012 (8th Cir. 2016). In deciding whether someone exercised managerial or supervisory authority, we consider the "exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, . . . the nature and scope of the illegal activity, and the degree of control and authority exercised over others." *United States v. Cole*, 657 F.3d 685, 687 (8th Cir. 2011) (per curiam) (quoting U.S.S.G. § 3B1.1 cmt. n.4).

During an evidentiary hearing, a detective testified that Heard recruited a co-conspirator to help him distribute opiate pills and directed another co-conspirator to drive someone to Bismarck to get more pills for distribution. One of Heard's other co-conspirators testified that Heard had given her pills in exchange for letting him distribute from her apartment and sold her pills at a discount for resale. Heard would give her the pills and have her pay him back a set amount later. He also stashed pills at her apartment. After his arrest, law enforcement overheard a phone call indicating that they had missed some pills there. So they searched her apartment again and found almost 900 pills hidden in a vent.

Heard's recruitment of a co-conspirator on its own justifies the district court's finding that he was a supervisor or manager. *See United States v. Erhart*, 415 F.3d 965, 973 (8th Cir. 2005) ("[T]he simple fact that a defendant recruits new members into a conspiracy supports a finding of the defendant being a manager or supervisor."). And although Heard insists that he merely distributed pills to his co-conspirators, the record supports the court's reasonable yet contrary view that he had sufficient control over them to support the role enhancement. Among other things, he used a co-conspirator's apartment as a stash house, *United States v. Denson*, 967 F.3d 699, 708 (8th Cir. 2020); directed another to travel to get pills for distribution, *see Cole*, 657 F.3d at 687; and received proceeds from the pills' sale, *United States v. Guel*, 184 F.3d 918, 923 (8th Cir. 1999).

C.

Finally, Heard challenges his sentence's procedural and substantive reasonableness. The district court varied up from a range of 135 to 168 months in prison to 180 months based in part on his conduct in pretrial detention. The Presentence Report said that he assaulted two inmates and was disciplined for a prison riot. During the riot, inmates barricaded the doors to their cell pod, covered the security cameras, armed themselves with mops and brooms, and started a fire.

Heard argues first that the district court procedurally erred in sentencing him by relying on a clearly erroneous fact—that he participated in the riot. At sentencing, he admitted to being in the cell pod during the riot but denied taking part. He did not challenge the PSR's statement that he was disciplined for the riot. Nor did he contest the probation officer's representation that an incident report indicated that the eight inmates disciplined for the riot "were the ones that were noted as being part of the issue." Because Heard was disciplined for the riot and the incident report corroborated that he was part of it, the court did not clearly err in finding that he had participated in the riot. *See United States v. Patterson*, 68 F.4th 402, 413 (8th Cir. 2023) ("Under the clearly erroneous standard, we will reverse a finding of fact only if, despite evidence supporting the finding, the evidence as a whole leaves us with a definite and firm conviction that the finding is a mistake." (citation omitted)).

We review the sentence's substantive reasonableness for abuse of discretion. *United States v. Levy*, 18 F.4th 1019, 1023 (8th Cir. 2021). A district court abuses its discretion when it "fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or commits a clear error of judgment in weighing the appropriate factors." *Id.* (citation omitted). Our review is "narrow and deferential," so it is the "unusual case" where we vacate even an above-Guidelines sentence as substantively unreasonable. *United States v. Feemster*, 572 F.3d 455, 464 (8th Cir. 2009) (en banc) (citation omitted).

Heard argues that his sentence is greater than necessary. But a 180-month sentence is well within the universe of reasonableness in this case. As the district court explained, Heard's drug trafficking "created a serious risk to th[e] community and contributed to the opioid epidemic in the [S]tate of North Dakota." And his misconduct during pretrial detention was "serious and warrant[ed] correction by th[e] Court as part of th[e] sentence." The court carefully considered the § 3553(a) factors and arrived at a reasonable sentence. *See United States v. Stephen*, 984 F.3d 625, 633 (8th Cir. 2021) (district courts have "wide latitude to weigh the § 3553(a) factors in each case" (citation omitted)).

Heard's last line of attack is that the district court didn't appropriately consider the need to avoid sentencing disparities because he received a much harsher sentence than many of his co-conspirators. But "the statutory direction to avoid unwarranted sentence disparities refers to *national* disparities, not differences among co-conspirators." *United States v. Merrett*, 8 F.4th 743, 753 (8th Cir. 2021) (citations omitted). Although we have granted relief based on a comparison between co-conspirators, that is an "unusual" situation where there must be both an "extreme" sentencing disparity "between similarly situated conspirators" and a "consolidated appeal" so that we can remand for those conspirators to be resentenced. *Id.* (citation omitted). Because Heard does not raise a national disparity claim, stands alone in this appeal, and received a reasonable sentence, we have no "principled basis" to say which conspirator got the right sentence. *Id.* (citation omitted).

## II.

We affirm the district court's judgment.

_____