# United States Court of Appeals

### For the Eighth Circuit

_____

No. 17-3399

_____

United States of America,

*Plaintiff - Appellee,*

v.

Anthony Leon Waits,

*Defendant - Appellant.*

_____

No. 17-3762

_____

United States of America,

*Plaintiff - Appellee*,

v.

Jacqueline D. Mills,

*Defendant - Appellant.*

_____

Appeals from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: September 25, 2018
Filed: March 29, 2019
_____

Before COLLOTON, BEAM, and GRASZ, Circuit Judges.

_____

COLLOTON, Circuit Judge.

A jury convicted Anthony Waits and Jacqueline Mills after a trial in a fraud case. The district court sentenced Waits and Mills to 175 and 150 months' imprisonment, respectively, and entered forfeiture orders against them. On appeal, Waits and Mills challenge their convictions, and Waits also challenges his term of imprisonment and forfeiture order. We affirm the convictions and Waits's term of imprisonment. We vacate the forfeiture order against Waits and remand for further proceedings on that issue.

I.

The United States Department of Agriculture's Food and Nutrition Service provides federal funding to after-school and summer programs that serve food to children in low-income areas. The agency acts through the Child and Adult Care Feeding Program, which includes an At-Risk Afterschool component, and the Summer Food Service Program.

In Arkansas, the Department of Human Services administers these programs. An organization in Arkansas must receive approval from the Department to become a sponsor who participates in a feeding program. A sponsor may serve snacks or meals to eligible children and receive reimbursement from the Department for the food served. As a condition of participation, a sponsor must follow the Department's

regulations governing feeding programs, including those that require keeping and maintaining records related to the program.

Waits and Mills were convicted of conspiracy to commit wire fraud related to their involvement with these feeding programs. The jury also found Mills guilty of multiple substantive counts of wire fraud, bribery of an agent of a program receiving federal funds, and money laundering.

According to evidence at trial, Mills participated in the programs as a sponsor and claimed inflated or fabricated reimbursements for more than thirty sites. To avoid scrutiny of her false claims, she paid money to Department officials in exchange for approval of her programs and help in avoiding detection. Waits was not a program sponsor, but he recruited others to become sponsors. Waits helped others to claim fraudulent reimbursements and to create receipts that supported their false claims. He then collected a share of the profits of the fraud.

After a jury convicted Waits and Mills, the district court sentenced them to 175 and 150 months' imprisonment, respectively. The court also ordered Waits to forfeit a personal money judgment of $3,316,280.85, based on the gross amount that he and his co-conspirators received from their participation in the conspiracy.

II.

Waits and Mills first argue that the district court erred in rejecting their proposed theory-of-defense instructions. We review the district court's rulings for abuse of discretion. *United States v. Christy*, 647 F.3d 768, 770 (8th Cir. 2011).

Waits's proposed instruction stated: "Anthony Leon Waits submits that he did not voluntarily or intentionally agree or conspire with anyone to commit the crime of wire fraud. Furthermore, he denies that he had knowledge of any agreement, plan or

scheme to commit wire fraud." The proposal then stated that the burden of proof is always on the prosecution, and that the jury must acquit Waits if his theory caused them to have a reasonable doubt.

Mills's proposed instruction would have informed the jury of her position that she did not intentionally participate in a scheme to defraud, and that she "relied on individuals working under her to provide accurate numbers of meals served to children." The proffered instruction continued by saying that Mills felt the witnesses who testified against her had a "personal stake" in the outcome of the case and testified "in the hopes that they will receive a lessor [sic] prison sentence."

Two well-established propositions on theory-of-defense instructions are applicable here. A district court need not adopt a defendant's proposed instruction if other instructions given to the jury adequately cover the substance of the requested instruction. *See United States v. Serrano-Lopez*, 366 F.3d 628, 637 (8th Cir. 2004). And a defendant is not entitled to a judicial narrative of her version of the facts, even though such a narrative might be characterized as a "theory of the defense." *Christy*, 647 F.3d at 770.

The substance of Waits's instruction was adequately covered by other instructions. The court elsewhere advised the jury of the government's burden of proof and the elements of the conspiracy and wire fraud charges. Waits was not entitled to an instruction that covered essentially the same ground in different words. Mills's proposal likewise conveyed information about burden of proof, elements of the offense, and weighing the credibility of witnesses that was addressed by other instructions. The portion in which Mills addressed her alleged reliance on employees amounted to a judicial narrative of her version of the facts that the court was not obliged to present—especially where the instruction was in tension with Mills's trial testimony denying that she blamed her employees. The district court did not abuse its discretion by refusing the proffered instructions.

-4-

Mills argues for the first time on appeal that the court erred by failing to include instructions regarding the testimony of an accomplice or credibility of a cooperating witness. *See* 8th Cir. Model Jury Instructions §§ 4.05A, 4.05B. Because Mills did not object to the omission of these instructions, we review only for plain error, *see United States v. Olano*, 507 U.S. 725 (1993), and the district court did not make an obvious mistake by failing to include these instructions *sua sponte*. The suggested instructions address the credibility of accomplices or cooperating witnesses in a specific way, but the court gave a general instruction about evaluating witness credibility that was not plainly insufficient to address the topic. The jury was able to give weight to any concerns about the credibility of accomplices and cooperating witnesses under the instructions delivered by the court. There was no plain error.

Waits next argues that the district court erred in admitting into evidence a recording of a conversation between Waits and a co-conspirator named Weeams. Weeams secretly recorded the conversation during the investigation at the behest of a federal investigator. Among other things, Waits was heard to make the following statement to Weeams while discussing the ongoing investigation:

> I hope them n*****s don't say nothing cause if they indict me I'm going to trial. Swear to God see that's what they don't know, I'm going to trial. And in trial, god damn me, they got to release that information. They might give me ten, twelve years, fifteen years, but when I get out I'm gonna knock on the door. (knocking noise) Who is it? Doom, doom, doom, doom, doom.

Weeams testified that Waits pointed his hand like a gun while saying, "[d]oom, doom, doom, doom, doom."

Waits complains that the government violated his Sixth Amendment right to counsel by recording the conversation, but the right does not attach until a prosecution is commenced. *Texas v. Cobb*, 532 U.S. 162, 167-68 (2001). The

disputed conversation occurred before the grand jury charged Waits, so the recording did not interfere with his right to counsel.

Waits also asserts that the district court abused its discretion by refusing to exclude the quoted statement under Federal Rule of Evidence 403. We accord great deference to the district court's balancing of probative value and prejudicial effect, *United States v. Castleman*, 795 F.3d 904, 914-15 (8th Cir. 2015), and we see no abuse of discretion here. The disputed statement, as explained by Weeams, suggests that Waits threatened harm to anyone who might cooperate against him. Threats against witnesses are generally admissible to show consciousness of guilt. *Id.* at 915. That Waits did not identify any specific witness who might be the subject of his wrath did not substantially weaken the probative value of the evidence. Evidence that Waits would retaliate against anyone who helped to convict him was relevant to show the defendant's mindset, and the jury reasonably could infer that he was concerned about witnesses who could implicate him in wrongdoing. The court did not abuse its discretion by allowing the evidence.

Waits next contends that the district court erred by denying, without a hearing, his motion for a new trial based on the exposure of jurors to publicity about the case. There was media coverage during Waits's trial, including an article in a local newspaper that discussed evidence that the district court had excluded. After defense counsel alleged during jury deliberations that jurors had been exposed to prejudicial publicity, the district court followed the three-step process set forth in *Tunstall v. Hopkins*, 306 F.3d 601, 610 (8th Cir. 2002):

> [A] federal district court must: 1) determine whether the publicity creates a danger of substantial prejudice to the accused; 2) if so, poll jurors individually to see if they were exposed; and 3) if they were exposed, then ascertain the extent and effect of infection, and determine what measure must be taken to protect the rights of the accused.

-6-

The court determined that the newspaper article "could create a danger of substantial prejudice to Mr. Waits," so the court polled the jurors to determine whether they had seen television coverage or read the newspaper article. After one juror replied in the affirmative, the court excused the other jurors and asked the juror what she had learned. The juror replied that she saw only video of the lawyers walking in front of the courthouse. The court determined that the juror's observations did not cause prejudice, and allowed the deliberations to proceed.

After the verdicts were returned, Waits moved for a new trial based on the jury's exposure to publicity during trial. In addition to relying on one juror's admitted exposure to television coverage, he submitted an affidavit from a witness who averred that she saw two jurors reading a newspaper in their vehicles before entering the courthouse. The district court denied the motion, finding that Waits had not demonstrated that he was prejudiced by any juror's exposure to publicity. The court credited the juror's testimony that she did not view anything prejudicial on television, and no other juror reported seeing any media coverage of the trial. The court further noted that the jury already had completed a verdict form saying that Waits was guilty before the testifying juror saw the attorneys on television.

The court did not abuse its discretion in denying the motion for new trial. The court followed the correct procedure to evaluate the claim of exposure to mid-trial publicity, and the account of the single juror did not support a finding of prejudice. The affidavit submitted after trial did not contradict the testimony of other jurors who denied reading coverage of the proceedings. Waits has not shown that he is entitled to a new trial.

III.

Waits also challenges the sentence imposed. He contends that the district court committed procedural error in calculating his advisory sentencing guideline range.

We review the district court's factual findings for clear error, and its interpretation of the sentencing guidelines *de novo*. *United States v. Rickert*, 685 F.3d 760, 767 (8th Cir. 2012).

Waits first argues that the district court erred in applying a two-level adjustment for obstruction of justice under USSG § 3C1.1. The sentencing guidelines provide for the adjustment "[i]f (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing." *Id.* The commentary includes a nonexhaustive list of actions that qualify, including when a defendant "threaten[s] . . . a co-defendant," "attempt[s] to suborn perjury," or engages in other conduct prohibited by obstruction of justice provisions under Title 18. *Id.*, comment. (n.4).

The record supports the district court's finding that Waits engaged in obstruction of justice. The recorded conversation and testimony from Weeams supported a finding that Waits threatened to retaliate against Weeams and other potential witnesses with his "doom, doom, doom" remark. The threat was communicated directly to Weeams, and even though Waits did not personally convey the threat to other conspirators, there was a sufficient basis for the court to infer that Waits's statements to Weeams—that other conspirators who testified would face "doom"—was an attempt by Waits to threaten or intimidate others. *See United States v. Capps*, 952 F.2d 1026, 1028-29 (8th Cir. 1991). There was also sufficient evidence to support a finding that Waits attempted, with consciousness of wrongdoing, to prevent others from communicating evidence of wrongdoing to law enforcement officers. *See United States v. Gaye*, 902 F.3d 780, 788 (8th Cir. 2018); 18 U.S.C. § 1512(b). In a recorded conversation, Waits instructed co-conspirator Weeams to lie to investigators, and another co-conspirator testified that Waits encouraged him to tell investigators falsely that he "fed the kids" and did everything that he was supposed to do. In light of this evidence, the district court did not err in applying the adjustment for obstruction of justice.

Waits next challenges the calculation of his criminal history score. He contends the district court erred by counting prior sentences for two different offenses—failure to appear in 1997 and battery in 2002—because he was sentenced for both offenses on the same day. There is no merit to this point, because prior sentences are counted separately when there is an intervening arrest. *See* USSG § 4A1.2(a)(2). Waits was arrested on the failure to appear charge in 1997, long before he committed the battery offense in 2002. Thus, even assuming that Waits was ultimately sentenced for both offenses on the same day, the offenses were separated by an intervening arrest. Accordingly, the district court properly assessed criminal history points for both prior sentences.

Waits also challenges the assessment of one criminal history point for a revocation of probation in Arkansas. He argues that the revocation was invalid because the state court record does not establish that the State issued a revocation warrant before his term of probation ended. This argument fails because Waits may not collaterally attack the state court's revocation determination in this federal sentencing proceeding. *See Moore v. United States*, 178 F.3d 994, 997 (8th Cir. 1999). Waits contends that this court allowed such a collateral attack in *United States v. Gleason*, 33 F. App'x 234 (8th Cir. 2002) (per curiam), but he is mistaken. The question there was whether the defendant committed a prior offense while on probation. *Id.* at 235. While this court looked to state law to determine whether the offender was on probation at the time of the prior offense, there was no collateral attack on a prior judgment of a state court. Here, an Arkansas state court already revoked Waits's probation in 2002, and Waits may not litigate in this case whether the 2002 revocation was proper. There was thus no error in calculating his criminal history score.

IV.

Waits next challenges the district court's order of forfeiture on two grounds. The first objection, raised for the first time on appeal, is that the district court

premised the order on a statute that does not apply. The indictment noticed a claim of forfeiture under 18 U.S.C. § 982. After trial, the government moved for an order of forfeiture under § 982(a)(3)(F), and the court ordered forfeiture under that provision. Section 982(a)(3)(F), however, applies only to offenses that involve a sale of assets acquired or held by the Federal Deposit Insurance Corporation, the National Credit Union Administration, or another conservator appointed by the Office of the Comptroller of the Currency. The assets at issue did not meet those criteria. The statutes that authorize forfeiture of property traceable to a wire fraud conspiracy, 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), were not cited in the government's motion or the forfeiture orders.

Waits's second complaint about the forfeiture order is that the court should not have included proceeds of the fraud scheme that Waits did not himself acquire. Citing the intervening decision in *Honeycutt v. United States*, 137 S. Ct. 1626 (2017), Waits argues that joint and several liability for proceeds received by co-conspirators is contrary to the forfeiture statute on which the district court relied. *Honeycutt* held that forfeiture under 21 U.S.C. § 853 of "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of" certain drug crimes is limited to property that the defendant himself acquired. *Id.* at 1630. Waits contends that because the district court's forfeiture order relied on 18 U.S.C. § 982(a)(3)(F), and the forfeiture of property under § 982 is governed by the provisions of 21 U.S.C. § 853, the rationale of *Honeycutt* applies and precludes joint and several liability.

The government responds that the incorrect statutory citation does not require vacating the forfeiture order. The implicit suggestion is that if Waits had objected, then the government could have amended its motion to cite the correct statutes, and the district court could have ordered the same forfeiture under those statutes, so Waits was not prejudiced. *See United States v. Silvious*, 512 F.3d 364, 369-70 (7th Cir. 2008). On the issue of joint and several liability, however, the government does not

urge that Waits failed to preserve the issue or that the question should be analyzed under the correct forfeiture statutes. The government responds only that *Honeycutt* changed the law with respect to joint and several liability, and "agrees that a limited remand is appropriate to reevaluate Anthony Waits's forfeiture judgment." This court recently held that joint and several liability is available in a forfeiture under § 981(a)(1)(C), *United States v. Peithman*, No. 17-2721, 2019 WL 942825, at *10 (8th Cir. Feb. 27, 2019), but the court has not addressed the issue under § 982(a)(3)(F).

Rather than address the propriety of the forfeiture order without adversarial briefing in a case already complicated by the government's reliance in the district court on an incorrect forfeiture statute, we vacate the forfeiture order and remand for further proceedings on forfeiture. *See Ragland v. United States*, 756 F.3d 597, 602 (8th Cir. 2014); *cf. Lawrence ex rel. Lawrence v. Chater*, 516 U.S. 163, 168 (1996). As the government agrees that the district court should reevaluate the forfeiture order in the first instance under current law, it is unnecessary to address at this juncture whether the district court's reliance on an inapplicable forfeiture statute by itself would require *vacatur*. Nor do we resolve whether the availability of joint and several liability under § 981(a)(1)(C) would be sufficient reason to uphold the entirety of a forfeiture order that was incorrectly premised on § 982(a)(3)(F). *Cf. United States v. Annabi*, 746 F.3d 83, 86 (2d Cir. 2014).

\*     \*     \*

For the foregoing reasons, we affirm the judgment of the district court except for the forfeiture order as to Waits, and we remand for further proceedings. Mills's *pro se* motion for leave to file a supplemental brief and to supplement the record is denied.

_____