# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-1528
_____

United States of America

*Plaintiff - Appellee*

v.

Eric Lee Coleman

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern

_____

Submitted: January 11, 2023
Filed: February 27, 2023

_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Eric Lee Coleman pleaded guilty to two counts of distributing a controlled substance in violation of 21 U.S.C. §§ 841(b)(1)(A) and 841(b)(1)(B). The district court[1] concluded that Coleman qualified as a career offender under U.S.S.G § 4B1.1.

_____

[1]The Honorable Stephanie M. Rose, Chief Judge, United States District Court for the Southern District of Iowa.

Coleman appeals, arguing that the district court erred by applying the career-offender guideline. We affirm.

## I.

Coleman was indicted for one count of conspiracy to distribute a controlled substance, *see* § 846 (Count 1), and two counts of distribution of a controlled substance, *see* § 841(b)(1)(B) (Count 2) and § 841(b)(1)(A) (Count 3). Coleman pleaded guilty to Counts 2 and 3.

The presentence investigation report ("PSR") concluded that Coleman qualified for the career-offender sentence enhancement. *See* § 4B1.1. A defendant qualifies for the enhancement if his present offense and at least two past offenses are felony convictions for a "crime of violence or a controlled substance offense." § 4B1.1(a). The PSR identified three predicate offenses qualifying Coleman for the enhancement. First, Coleman was convicted in Illinois in 1994 for attempted murder in the first degree. Second, Coleman was convicted in Illinois in 1994 for aggravated vehicular hijacking. And third, Coleman was convicted in Iowa in 2018 for possession of methamphetamine with intent to deliver.

Coleman received concurrent 14-year sentences for his attempted murder and vehicular hijacking offenses on April 27, 1995. On that same day, Coleman also received a 4-year sentence for possession of contraband in a penal institution to run consecutively to the attempted murder and vehicular hijacking sentences. According to the PSR, Coleman was released on parole in February 2003, had his parole revoked on April 29, 2004, and was paroled again on July 1, 2004. The PSR and Coleman's Offender Custody History form do not definitively state whether Coleman was serving his sentence for attempted murder, vehicular hijacking, or possession of contraband at the time he was paroled.[2] Coleman's Offender Custody

---

[2]Coleman's Offender Custody History Form was prepared by the Illinois Department of Corrections and lists each of Coleman's Illinois offenses and the corresponding date of discharge.

History form states that Coleman completed his supervised release for the attempted murder and aggravated vehicular hijacking offenses in December 2005.

Coleman objected to the PSR, arguing that his attempted murder and vehicular hijacking offenses do not qualify as predicate offenses for the career-offender enhancement for two reasons. First, Coleman claimed that he was not imprisoned for attempted murder or vehicular hijacking within fifteen years of the time when the conduct underlying his present drug-distribution offenses began, as required by the guidelines. *See* §§ 4A1.2(e)(1), 4B1.2 cmt. n.3. Second, Coleman claimed that his Illinois attempted murder and vehicular hijacking convictions are not crimes of violence under § 4B1.2(a).

The district court overruled Coleman's objections. The district court found that Coleman's conduct underlying his present drug-distribution offense began by May 1, 2019 and that he was incarcerated for his attempted murder and vehicular hijacking offenses through July 1, 2004 (which is within fifteen years of May 1, 2019). The district court also concluded that Coleman's attempted murder and vehicular hijacking offenses were crimes of violence. The court thus determined that Coleman qualified as a career offender. With a criminal-history category of VI and a total offense level of 34, the court determined an advisory guidelines range of 262 to 327 months' imprisonment and imposed a within-guidelines sentence of 262 months' imprisonment. Coleman appeals.

## II.

On appeal, Coleman argues that his attempted murder and vehicular hijacking offenses are not predicate offenses for the career-offender enhancement because they fall outside the fifteen-year limitations period and are not crimes of violence. "We review the district court's factual findings for clear error and its construction and application of the sentencing guidelines *de novo*." *United States v. Strong*, 773 F.3d 920, 925 (8th Cir. 2014).

## A.

We first address Coleman's argument that his attempted murder and vehicular hijacking offenses fall outside the fifteen-year limitations period. The parties dispute whether Coleman was paroled for those offenses in February 2003 and consequently whether his parole was revoked for those offenses in April 2004.

An adult defendant who commits an offense punishable by more than a year in prison qualifies for the career-offender guideline if (1) "the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense," (2) "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense," and (3) the prior convictions were imposed or the defendant was incarcerated (for those convictions) within fifteen years of the defendant beginning the conduct underlying his current offense. *See* §§ 4A1.2(e)(1), 4B1.1(a). The district court must find by a preponderance of the evidence facts relevant to the application of the sentencing guidelines. *United States v. Dock*, 967 F.3d 903, 904-05 (8th Cir. 2014).

Coleman disputes the district court's finding that he was imprisoned for his attempted murder and vehicular hijacking convictions through July 2004, a finding necessary to its conclusion that Coleman was imprisoned for those offenses within fifteen years of his present offense. Coleman emphasizes that his 4-year sentence for possession of contraband in a penal institution was imposed on the same day he was sentenced for murder and vehicular hijacking and that it ran consecutively to those sentences. Coleman therefore argues that he likely completed his concurrent sentences for attempted murder and vehicular hijacking by the time he was released on parole in February 2003 and that he returned to prison from April 2004 to July 2004 for violating parole on his contraband conviction instead. Coleman also notes that he received two other 3-year sentences in August 1995 for possession of a controlled substance and violating parole and that the PSR did not indicate whether these sentences ran consecutively or concurrently to his attempted murder and

-4-

vehicular hijacking sentences. Coleman thus claims that he may have returned to prison to serve time for those convictions as well.

We disagree. According to Coleman's Offender Custody History form, the mandatory supervised release period for his attempted murder and vehicular hijacking convictions was discharged in December 2005. Coleman insinuates that this listed discharge date is wrong. But the discharge date for his attempted murder and vehicular hijacking convictions is entirely consistent with Illinois state practice. Illinois treats a defendant who receives consecutive sentences as serving a single term, with the mandatory supervised release period "corresponding to the most serious offense." *See People v. Jackson*, 897 N.E.2d 752, 755 (Ill. 2008). Because Coleman's attempted murder and vehicular hijacking convictions were the most serious of his convictions,[3] a preponderance of the evidence demonstrates that his parole for his attempted murder and vehicular hijacking convictions was revoked in April 2004 and that he returned to prison to serve time for those offenses through July 2004. Therefore, the district court did not clearly err.

B.

We next address Coleman's argument that his attempted murder and vehicular hijacking convictions are not crimes of violence, starting with his attempted murder conviction.

We determine whether a crime of conviction is a crime of violence using the categorical approach. *United States v. Roblero-Ramirez*, 716 F.3d 1122, 1125 (8th

---

[3]730 Ill. Comp. Stat. § 5/5-8-1(d)(1) (1995) established a term of 3 years' mandatory supervised release for a Class X felony, which included aggravated vehicular hijacking and first-degree attempted murder. Coleman's possession-of-a-controlled-substance conviction was a Class 1 felony with a 1-year term of supervised release. *See* § 5/5-8-1(d)(2)(1995). Coleman's contraband conviction was a Class 3 felony with a 6-month term of supervised release. *See* § 5/5-8-1(d)(2) (1995).

Cir. 2013). "Under this approach, we look not to the facts of the particular prior case, but instead to whether the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding crime of violence." *Id.* (internal quotation marks omitted). When applying the categorical approach, we "focus solely on whether the elements of the crime of conviction sufficiently match the elements" of the generic offense. *Mathis v. United States*, 579 U.S. 500, 504 (2016).

The enumerated clause of § 4B1.2(a)(2) lists murder as a crime of violence. The commentary explains that attempt crimes corresponding to the offenses listed in the enumerated clause are also crimes of violence. § 4B1.2, cmt. n.1; *United States v. Mendoza-Figueroa*, 65 F.3d 691, 694 (8th Cir. 1995) (en banc) (holding that the commentary to § 4B1.2 is binding in construing the definitions of "crime of violence" and "controlled substance offense"). At the time of Coleman's conviction, Illinois attempted murder contained the same elements as the generic federal offense, namely, intent to commit murder and a substantial step towards the commission of the murder. *See* 720 Ill. Comp. Stat. §§ 5/9-1(a), 5/8-4(a) (1994); *see also United States v. Young*, 613 F.3d 735, 742-43 (8th Cir. 2010). Nevertheless, Coleman argues that his attempted murder conviction does not fit within the definition of generic federal attempted murder. Specifically, he claims that the Illinois attempted murder statute in 1994 did not allow for an affirmative defense of abandonment but that the generic federal attempted murder offense does. According to Coleman, we should look to affirmative defenses when comparing the definitions of a federal generic offense with a state offense because affirmative defenses help demonstrate what conduct is prohibited (or permissible) under a statute. In support of his view, Coleman cites *United States v. Medina-Velencia*, a case in which we referred to a statutory affirmative defense when analyzing the scope of conduct prohibited by a state criminal statute as part of the categorical-approach analysis. *See* 538 F.3d 831, 835 (8th Cir. 2008).

Coleman's argument is at odds with *Mathis*'s instruction that we must "focus solely on whether the elements of the crime of conviction sufficiently match the

elements" of the generic offense. 579 U.S. at 504. Coleman acknowledges *Mathis*'s directive but claims that the Supreme Court did not squarely hold that affirmative defenses are irrelevant to the categorical approach. That is true, but we view *Mathis* as necessarily preventing the consideration of affirmative defenses under the categorical approach. *Mathis* defined a crime's elements as "the constituent parts of a crime's legal definition—the things the prosecution must prove to sustain a conviction." *Id*. And prosecutors need not prove an affirmative defense (or the absence thereof) to sustain a conviction. *See Smith v. United States*, 568 U.S. 106, 110 (2013) ("While the Government must prove beyond a reasonable doubt every fact necessary to constitute the crime with which the defendant is charged, proof of the nonexistence of all affirmative defenses has never been constitutionally required.") (brackets, citation, and internal quotation marks omitted). We therefore agree with the Fifth Circuit that *Mathis* barred the argument that courts should consider affirmative defenses when applying the categorical approach because "it is black letter law that an affirmative defense (or the absence thereof) is not the same thing as an element of the crime." *See United States v. Escalante*, 933 F.3d 395, 399 (5th Cir. 2019); *see also United States v. Velasquez-Bosque*, 601 F.3d 955, 963 (9th Cir. 2010) (stating that "[t]he availability of an affirmative defense is not relevant to the categorical analysis"); *Donawa v. United States Attorney General*, 735 F.3d 1275, 1282 (11th Cir. 2013) ("An affirmative defense generally does not create a separate element of the offense that the government is required to prove in order to obtain a conviction."). Thus, *Mathis* forecloses Coleman's argument.[4]

In sum, we find that Coleman's attempted murder offense has the same elements as the generic federal offense and therefore is a crime of violence under § 4B1.2(a)(1). Coleman does not contest that his 2018 Iowa drug offense is a valid predicate offense for the imposition of the career-offender guideline. So, our determination that Coleman's attempted murder conviction is a crime of violence

---

[4]Because we find that Coleman's Illinois attempted murder conviction is a crime of violence under the guidelines' enumerated clause, we need not consider whether it also qualifies as a crime of violence under the elements clause of § 4B1.2(a)(1).

gives Coleman two predicate offenses, and we need not consider the status of Coleman's vehicular hijacking offense in order to find that the career-offender enhancement under § 4B1(a)(1) applies.

## III.

For the foregoing reasons, we affirm.

_____