# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-2841
_____

United States of America

*Plaintiff - Appellee*

v.

Christopher Allen Edwards

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: May 10, 2024
Filed: August 6, 2024
_____

Before COLLOTON, Chief Judge, BENTON and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Christopher Edwards was convicted by a jury of conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846, and possession with intent to distribute a controlled substance, in violation of 21 U.S.C.

§ 841(a)(1) and (b)(1)(B).  The district court[1] sentenced him to 220 months' imprisonment and 8 years of supervised release.  He appeals, asserting both trial and sentencing errors.  Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

After receiving multiple tips that Edwards was selling drugs, law enforcement began investigating him for drug trafficking.  The tips allowed investigators to identify Edwards's vehicle and home and an apartment belonging to his coconspirator, Chloe Johnson.  Investigators began tracking his vehicle and observed a pattern of quick roundtrips between Johnson's apartment and several neighboring towns.  This led investigators to believe Edwards was selling drugs and using Johnson's apartment to store drugs and possibly cash proceeds.

Law enforcement conducted a controlled buy of fentanyl and methamphetamine from Johnson at her apartment and executed multiple search warrants as part of the investigation: two individuals' homes where officers believed Edwards had sold drugs the previous night; Johnson's apartment; Edwards's house; and a rental car obtained by Edwards.  These searches yielded varying amounts of packaged cocaine, a heroin and fentanyl mixture, fentanyl, methamphetamine, and several thousand dollars in cash.  The search of Edwards's rental car revealed four kilograms of cocaine, documented by body camera footage and photographs.  The cocaine was left in the rental car, and the car was towed to the local sheriff's office.  An officer followed the rental car as it was towed to ensure the car and any evidence were not tampered with, and the officer remained with the car until other investigators arrived to finish the search.  At the sheriff's office, the lead investigator removed the cocaine from the rental car, weighed, photographed, and field-tested it, and created an inventory of evidence seized.  However, he failed to list the four kilograms of cocaine on the search warrant inventory.

---

[1]The Honorable Nancy E. Brasel, United States District Judge for the District of Minnesota.

Edwards and Johnson were subsequently indicted for conspiracy to distribute several controlled substances and possession of cocaine with intent to distribute. The conspiracy count specifically alleged that Edwards was responsible for "500 grams or more of a mixture or substance containing . . . cocaine; 100 grams or more of a mixture or substance containing . . . heroin; [and] 40 grams or more of a mixture or substance containing . . . fentanyl . . . ." Conviction under each of these weights would trigger a five-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(B). The possession count alleged that Edwards possessed 500 grams or more of cocaine.

Edwards filed a motion to suppress the evidence seized from his home and the rental car, arguing that the search warrants were not supported by probable cause. The district court denied the motion upon the recommendation of the magistrate judge.[2] After the deadline for pretrial motions had passed, Edwards moved for leave to file an amended motion to suppress the cocaine seized during the rental car search, arguing that the failure to record the cocaine on the search warrant inventory broke the chain of custody and thus warranted its suppression. The district court denied the motion as untimely, finding Edwards had not shown good cause for his failure to timely raise the argument.

At trial, the Government sought to admit into evidence the cocaine it asserted was seized from Edwards's rental car. Edwards lodged a chain-of-custody objection, to which the Government responded that Edwards's concern about any defect in the chain of custody went to the cocaine's evidentiary weight, as opposed to its admissibility. The district court overruled Edwards's objection. Later, the Government sought to introduce a photograph of the same cocaine taken in the sheriff's office's evidence room. Edwards objected, arguing that the substance in the photo appeared to be altered because it was pink in color. The district court also overruled this objection. The Government also elicited extensive testimony about

---

[2]The Honorable Elizabeth Cowan Wright, United States Magistrate Judge for the District of Minnesota.

the efforts made to guarantee the substance was not altered, including from the officer that discovered the cocaine, the officer that followed the rental car with the cocaine to the sheriff's office, the employee who processed the cocaine into evidence and into a secure evidence locker, the officer who checked that cocaine out from the locker and transported it to the laboratory for testing, and the forensic scientist who detailed the process for handling and testing the cocaine.

At the close of trial, the district court instructed the jury that a guilty verdict on the conspiracy count must be accompanied by findings on the quantities of cocaine, heroin, fentanyl, and methamphetamine that were attributable to Edwards in the conspiracy, including the quantities that Johnson distributed or agreed to distribute, provided that her actions were part of the conspiracy and were reasonably foreseeable by Edwards. The district court also instructed the jury that the Government need only prove that Edwards knew generally that he had agreed or intended to distribute a controlled substance and was not required to establish Edwards's knowledge of the specific drug types at issue. The jury returned a guilty verdict on both counts and found that the Government sufficiently established the drug quantities alleged in the indictment.

The United States Probation Office prepared a Presentence Investigation Report (PSR), which calculated an advisory United States Sentencing Guidelines range of 360 months' to life imprisonment and recommended application of a career-offender enhancement because Edwards had at least two prior felony convictions for crimes of violence: first-degree robbery and first-degree assault. While Edwards did not object to the specific portions of the PSR detailing these prior felonies and the dates on which he committed them, at the sentencing hearing, he argued that there was no intervening arrest such that these two felonies should be counted as separate crimes of violence. The Government had also submitted to the district court the criminal complaints for these prior felonies as proof of the dates Edwards committed these crimes and the dates of arrest. The district court overruled Edwards's objection and found there was an intervening arrest such that Edwards's prior felonies should be counted separately; thus, it found that the career-offender

enhancement applied. In imposing Edwards's sentence, the district court detailed its application of the sentencing factors in 18 U.S.C. § 3553(a) to Edwards's case, explaining various mitigating and aggravating circumstances. Based on these considerations, the district court varied downward by 140 months and imposed 220 months' imprisonment and 8 years of supervised release. Edwards appeals.

## II.

Edwards asserts two trial errors: (A) the admission of cocaine into evidence despite an insufficient showing by the Government of an adequate chain of custody; and (B) improper instruction of the jury concerning how it was to determine drug quantities for which Edwards was responsible.

## A.

We review the admission of evidence for a clear abuse of discretion, United States v. Moore, 71 F.4th 678, 686 (8th Cir. 2023), and we may affirm "on any basis supported by the record," United States v. Needham, 852 F.3d 830, 836 (8th Cir. 2017). "[W]e afford deference to the district judge who saw and heard the evidence" and will only reverse "when an improper evidentiary ruling affected the defendant's substantial rights or had more than a slight influence on the verdict." United States v. Johnson, 860 F.3d 1133, 1139 (8th Cir. 2017) (citations omitted).

Edwards asserts that the district court abused its discretion by admitting the cocaine into evidence because there was reason to believe the substance had been altered, and the Government had not established an adequate foundation for the chain of custody because the cocaine was omitted from the search warrant inventory. Specifically, Edwards emphasizes that photographs of the cocaine allegedly recovered from the rental car showed that the substance appeared pink in color, and the lead investigator, Joel Johnson, testified that he could not explain the cocaine's color and noted that it was "in different packaging and a little bit broken up."

Edwards further asserts that the failure to properly record the cocaine on the search warrant inventory "was part of an overall breakdown in the chain of custody."

The Government argues that Edwards did not properly preserve his chain-of-custody arguments about the cocaine's appearance and the failure to include it on the search warrant inventory because he did not articulate these concerns when he objected. See United States v. Doddington, 822 F.2d 818, 823 n.3 (8th Cir. 1987) (explaining that foundation objections, including those to the chain of custody, "must be specific, and a defendant may not raise on appeal a ground not mentioned at the time of his objection"); see also United States v. Kimble, 54 F.4th 538, 549 (8th Cir. 2022) ("[Defendant] needed to object with specificity as to the foundational defects . . . ."). Edwards disagrees, arguing that his objection to the cocaine's admission based on chain of custody, his later objection to the admission of a photograph of the cocaine based on its allegedly altered appearance, and his pretrial motion to suppress, in which he alerted the district court to the search warrant inventory defect, were sufficient to preserve these arguments. Edwards acknowledges, though, that the district court denied the pretrial motion to suppress as untimely without reaching the merits. If Edwards did not properly preserve his arguments, we would review for plain error, rather than an abuse of discretion. See United States v. Broussard, 87 F.4th 376, 379 (8th Cir. 2023). Regardless, we need not decide whether Edwards lodged a sufficiently specific objection to preserve the arguments for appeal because, even assuming that he did, the district court did not err in overruling the objection and admitting the evidence.

To admit an exhibit into evidence:

'[T]here must be a showing that the physical exhibit being offered is in substantially the same condition as when the crime was committed.' 'The district court may admit a piece of physical evidence if it is satisfied that there is a reasonable probability [that] such evidence has not been changed or altered.' 'Factors to be considered in making the determination of admissibility include the nature of the article, the circumstances surrounding its preservation and custody, and the

-6-

likelihood of others tampering with it.' Generally, 'any defect in the chain of custody goes more to [the] weight [of the evidence rather] than its admissibility.'

Moore, 71 F.4th at 687 (alterations in original) (citations omitted); see also United States v. Ortega, 750 F.3d 1020, 1025-26 (8th Cir. 2014) (explaining that defendant's argument "attack[ing] the foundation for admission of the cocaine by pointing to a gap in the chain of custody to question the authenticity of the sample" normally goes to the weight of the evidence, not its admissibility). Importantly, "[t]he chain of custody does not have to be perfect. All that is required is testimony that the evidence in question was the same as that involved in the offense and that it is substantially unchanged." United States v. Johnson, 688 F.3d 494, 505 (8th Cir. 2012).

First, we are unconvinced by Edwards's argument that the pink hue of the cocaine shown in the photograph taken in the evidence room indicated that it had been altered. For this proposition, Edwards asserts that Johnson testified that he could not explain the change in color of the substance shown in that photograph. But Edwards mischaracterizes Johnson's testimony. Johnson testified that he could not explain why this particular cocaine was pink instead of white; he made no suggestion that the cocaine's color had *changed* between when it was discovered and when it was examined in the evidence room. In fact, Johnson testified that, in his experience "it is common for narcotics to show up in other colors," and various factors such as the manufacturer and the manufacturing location and process can play a role in its color. Moreover, both the photograph taken at the time the cocaine was seized from the rental car and the photograph taken when it was assessed in the evidence room show that the substance had a pink hue. And while Johnson testified that the cocaine shown in the photograph taken in the evidence room was "in different packaging and a little bit broken up," he explained that he believed this occurred because of testing done by the laboratory and that, in his experience, bricks of cocaine tend to break up over time.

Edwards similarly fails to persuade us that law enforcement's failure to record the cocaine on the search warrant inventory was a sufficient defect in the chain of custody such that the cocaine's admission into evidence was an abuse of discretion. Indeed, testimony presented at trial shows that the chain of custody was adequately established. This includes testimony explaining that: the cocaine was in a similar condition at trial as when an officer found it in the rental car; the cocaine remained in the car while an officer waited at the scene for a tow truck; an officer followed the car as it was towed to the sheriff's office; upon the car's arrival at the sheriff's office, the cocaine was processed as evidence, labeled, and stored in a secure evidence locker accessible only by evidence technicians; an officer checked the cocaine out of the secure evidence locker and transported it to a separate laboratory for further testing; and that laboratory's forensic scientist followed a meticulous process for the handling, tracking, and processing of the cocaine before it was returned to law enforcement. Further, none of this testimony suggested that the cocaine had been altered. While law enforcement's failure to record the cocaine on the search warrant inventory may have been a defect in the chain of custody, any concern that Edwards has with that purported defect goes more to its weight, rather than its admissibility. Moore, 71 F.4th at 687. We therefore find no error in the district court's admission of the cocaine into evidence.

B.

Edwards next challenges the district court's jury-instruction charge on two fronts. He first asserts that the district court erroneously permitted the jury to attribute to him drug quantities beyond those for which he was "personally responsible" in the conspiracy. We find that Edwards has waived this argument, as he, along with the Government, jointly proffered the very instruction that he now challenges on appeal. See United States v. Mariano, 729 F.3d 874, 881 (8th Cir. 2013). The relevant part of that proposed instruction, which borrows heavily from the Eighth Circuit Model Jury Instructions, reads:

You are instructed that the quantity of controlled substances involved in the agreement or understanding includes controlled substances the defendant possessed for personal use, distributed, or agreed to distribute. The quantity also includes controlled substances fellow conspirators distributed or agreed to distribute, if you find that those distributions or agreements to distribute were a necessary or natural consequence of the agreement or understanding and were reasonably foreseeable by the defendant.

See Eighth Circuit Manual of Model Jury Instructions (Criminal) 6.21.846A.1 (2023). The district court instructed the jury with nearly identical language:

If you find the defendant guilty of the crime charged in Count 1, you must then determine unanimously and beyond a reasonable doubt the quantity of any mixture or substance containing cocaine, heroin, fentanyl, and methamphetamine that the defendant possessed for personal use, distributed, or agreed to distribute. The quantity also includes controlled substances fellow conspirators distributed or agreed to distribute, if you find that those distributions or agreements to distribute were a necessary or natural consequence of the agreement or understanding and were reasonably foreseeable by the defendant.

Thus, while Edwards argues that the district court erred by failing to instruct the jury that he must have reasonably foreseen that the conspiracy involved the distribution of fentanyl-laced heroin—a contention we find puzzling given the plain text of the charge—it is well-established "that a defendant who requests and receives a jury instruction may not challenge the giving of that instruction on appeal." Mariano, 729 F.3d at 881. Stated otherwise, by requesting an instruction that the district court adopted largely verbatim, Edwards "'invited' the alleged mistake" and therefore has "give[n] up the right to appeal any error in that instruction." Id. at 880-81 (citation omitted).

Relatedly, Edwards argues that the district court erred in instructing the jury that he need not have knowledge of the precise nature of the controlled substances that were agreed to be distributed in the conspiracy, instead requiring knowledge only that "some type" of controlled substance was agreed to be distributed. "We

-9-

typically review a challenge to jury instructions for an abuse of discretion." United States v. Boen, 59 F.4th 983, 993 (8th Cir. 2023) (citation omitted). Here, Edwards objected to this instruction as it was originally proposed by the Government, but he did not provide the grounds for doing so. Further, our review of the record reveals that Edwards failed to elaborate on his objection at any point before or during trial. See Fed. R. Crim. P. 30(d) ("A party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate."). By failing to comply with the dictates of Rule 30(d), Edwards concedes that he benefits only from plain-error review. See Fed. R. Crim. P. 52(b). To satisfy this demanding standard, he "must show that there was an error that is clear or obvious under current law, that affected [his] substantial rights, and that seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Spencer, 998 F.3d 813, 819 (8th Cir. 2021) (citation omitted).

As Edwards acknowledges, this Court has previously rejected his argument, finding that "a defendant may be convicted of a drug conspiracy violation [under 21 U.S.C. §§ 841 and 846] without proof that he knew the precise drug he conspired to possess and distribute." United States v. Sheppard, 219 F.3d 766, 770 (8th Cir. 2000); see also United States v. Ramos, 814 F.3d 910, 915 (8th Cir. 2016) ("[T]he 'knowingly' element of th[e] offense refers to a general criminal intent, i.e., awareness that the substance possessed was a controlled substance of some kind. Since the factfinder can seldom know with certainty what someone actually knows, knowledge must necessarily be shown circumstantially." (alterations in original) (citation omitted)). The Supreme Court concluded similarly in McFadden v. United States that "[t]he ordinary meaning of § 841(a)(1) . . . requires a defendant to know only that the substance he is dealing with is some unspecified substance listed on the federal drug schedules." 576 U.S. 186, 192 (2015).

Nonetheless, Edwards relies on Apprendi and its progeny to argue that because certain types of controlled substances trigger mandatory-minimum penalties under § 841(b)'s sentencing provisions, knowledge of drug identity and quantity is

an element of the offense that must be submitted to a jury. See Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) (concluding that a jury must find "facts that increase the prescribed range of penalties to which a criminal defendant is exposed" (citation omitted)); Alleyne v. United States, 570 U.S. 99, 112 (2013) (applying the holding of Apprendi to facts that increase the mandatory-minimum sentence for an offense). Importantly, however, § 841(b) does not impose the same mens rea requirement that § 841(a) does; the only "fact" that the Government must prove for a § 841(b) enhancement to apply is "that the offense '*involved*' a particular type and quantity of controlled substance, not that the defendant *knew* he was distributing that particular type and quantity." Sheppard, 219 F.3d at 768 n.2. (emphasis added). Accordingly, even under Apprendi, "the jury need only be instructed to find, as it did in this case, that a particular type and quantity of controlled substance was involved in the offense." Id.

Edwards also argues that the Supreme Court's decision in Rehaif v. United States constitutes intervening precedent that vitiates this Court's § 841 jurisprudence. 588 U.S. 225 (2019). There, the Supreme Court held that in a prosecution under 18 U.S.C. § 922(g), which prohibits the possession of firearms by certain persons, and 18 U.S.C. § 924(a)(2) (amended 2022), which prescribes penalties to "anyone who 'knowingly violates'" § 922(g), the Government must prove both that the defendant knew he possessed a firearm and knew that he belonged to a category of persons prohibited from doing so. Id. at 227 (emphasis omitted). The Court discussed the "longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state regarding 'each of the statutory elements that criminalize otherwise innocent conduct.'" Id. at 229 (citation omitted). According to Edwards, this presumption of scienter applies with equal force here to require extending § 841(a)'s mens rea requirement to § 841(b)'s mandatory-minimum penalty provisions. Otherwise, Edwards asserts, a defendant could be punished for conduct exceeding his level of culpability. See id. at 233 ("[W]e normally presume that Congress did not intend to impose criminal liability on persons who, due to lack of knowledge, did not have a wrongful mental state.").

-11-

We have not had occasion to squarely address the effect of <u>Rehaif</u> in this context, but we now join our sister circuits to have considered the issue and conclude that <u>Rehaif</u> does not affect the statutory requirements under § 841 or otherwise call into question our case law holding that the Government need not prove a mens rea regarding drug type or quantity under § 841(b).  <u>See</u> <u>United States v. Cruz-Rivera</u>, 14 F.4th 32, 55-56 (1st Cir. 2021); <u>United States v. Mahaffey</u>, 983 F.3d 238, 242-45 (6th Cir. 2020); <u>United States v. Collazo</u>, 984 F.3d 1308, 1322-29 (9th Cir. 2021) (en banc); <u>see also</u> <u>United States v. Vela Diaz</u>, 793 F. App'x 351, 351-52 (5th Cir. 2020) (per curiam).  Apart from the plain text of § 841, discussed <u>supra</u>, §§ 922(g) and 924(a)(2) differ markedly in structure from § 841(a) and (b).  The Supreme Court determined that "[t]he term 'knowingly' in § 924(a)(2) modifies the verb 'violates' and its direct object, which in this case is § 922(g). . . .  As 'a matter of ordinary English grammar,'" then, the term "knowingly" applies "to all the subsequently listed elements of the crime."  <u>Rehaif</u>, 588 U.S. at 229-30 (citation omitted).  In § 841(a), by contrast, the "knowingly" mens rea requirement "applies just within that subsection to cover the statute's verbs (i.e., 'manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense') and 'the object of those verbs—"a controlled substance."'"  <u>Mahaffey</u>, 983 F.3d at 244 (citations omitted).  In other words, § 841(b)'s mandatory-minimum sentencing provisions are "not the object of the verbs in § 841(a)(1)," as "the only triggering word" in that subsection is "involving."  <u>Id.</u> (citation omitted).

Moreover, the Court in <u>Rehaif</u> noted that the common-law scienter presumption "helps to separate wrongful from innocent acts," e.g., innocuous gun possession from knowingly unlawful gun possession.  588 U.S. at 232.  Critically, that dichotomy is absent in § 841: There is no scenario where an individual can knowingly—but innocently—"manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."  21 U.S.C. § 841(a)(1).  Thus, "[r]egardless of the type and quantity of the controlled substance, there is no risk that a defendant would fail to understand the unlawful nature of the act."  <u>Collazo</u>, 984 F.3d at 1327.  At bottom, then, § 841(b)'s penalty provisions

"serve[] not to convict an innocent actor, but rather to increase a defendant's sentence once convicted." Mahaffey, 983 F.3d at 245.

In sum, the district court correctly applied the law in instructing the jury that Edwards need not know the type and quantity of controlled substances that were agreed to be distributed in the conspiracy. See United States v. Maxwell, 61 F.4th 549, 558 (8th Cir.), cert. denied, 144 S. Ct. 217 (2023). Accordingly, Edwards has failed to establish error, plain or otherwise.

## III.

Edwards next asserts two sentencing errors: (A) the district court's finding that Edwards qualified as a career offender; and (B) the district court's improper reliance on its characterization of Edwards's codefendant as a victim, which led it to impose a substantively unreasonable sentence.

## A.

We first address Edwards's challenge to his career-offender status. Edwards qualifies as a career offender if, as relevant here, he has at least two prior felony convictions for crimes of violence. USSG § 4B1.1(a). To determine the number of qualifying offenses, "prior sentences are counted separately when there is an intervening arrest," United States v. Waits, 919 F.3d 1090, 1096 (8th Cir. 2019), which occurs when "the defendant is arrested for the first offense prior to committing the second offense," USSG § 4A1.2(a)(2). "We review the district court's factual findings for clear error and its construction and application of the sentencing guidelines *de novo*." United States v. Coleman, 60 F.4th 1184, 1186 (8th Cir.), cert. denied, 143 S. Ct. 2630 (2023) (citation omitted).

Edwards asserts that his first-degree robbery and first-degree assault convictions should not count as separate offenses for the purpose of determining career-offender status because the Government did not meet its burden of proving

-13-

an intervening arrest. The Government disagrees, claiming that because the portions of the PSR to which Edwards did not object establish that Edwards was arrested for the robbery offense and then later committed the assault offense, there was an intervening arrest that permitted counting the two offenses separately. Because Edwards's challenge to his career-offender status is cabined only to the district court's finding that there was an intervening arrest, i.e., a factual finding, we review for clear error. See United States v. Walterman, 343 F.3d 938, 940 (8th Cir. 2003).

Edwards's PSR details that he was arrested for first-degree aggravated robbery on December 13, 2004, and, while awaiting trial for that offense, he was arrested for first-degree assault on January 31, 2006, among other things. The criminal complaint that the Government submitted to the district court for the assault offense clarifies that Edwards committed the assault on January 28, 2006. Edwards does not dispute the date he committed the assault—he disputes only whether the Government sufficiently proved the date of the robbery arrest. But the date of the robbery arrest was included in the portions of the PSR to which Edwards did not object, so the district court was entitled to accept the date for purposes of determining whether there was an intervening arrest. See United States v. Dokes, 872 F.3d 886, 889 (8th Cir. 2017) ("Unless a party objects . . . to fact statements in the PSR, the district court may accept those facts as true at sentencing."). Because Edwards was arrested for robbery before he committed assault, there was an intervening arrest. Accordingly, we reject Edwards's contention that the district court clearly erred in finding that there was an intervening arrest and thus counting the two offenses separately.

B.

Edwards finally challenges his sentence as substantively unreasonable. "We review the substantive reasonableness of a sentence for an abuse of discretion." United States v. Merrett, 8 F.4th 743, 751 (8th Cir. 2021). Edwards asserts that the district court imposed a substantively unreasonable sentence, primarily claiming that the district court improperly relied on its characterization of Johnson as Edwards's

victim, a finding not supported by the evidence or even Johnson's own characterization. See id. (explaining that a district court abuses its discretion by "giv[ing] significant weight to an improper or irrelevant factor" (citation omitted)).

The district court imposed a below-Guidelines range sentence, varying downward by 140 months. "[A] sentence below or within the Guidelines range is presumptively reasonable on appeal." United States v. Barraza, 982 F.3d 1106, 1116 (8th Cir. 2020) (alteration in original) (citation omitted). And when the district court varies downward, "it is nearly inconceivable that the court abused its discretion in not varying downward still further." Id. (citation omitted).

The district court explained its justification for the sentence, considering the sentencing factors in 18 U.S.C. § 3553(a). The district court weighed various mitigating factors, including Edwards's alleged community support, his codefendant's request for leniency on his behalf, the circumstances of his upbringing, his remorse, and his trustee status in jail. However, the district court balanced these mitigating factors against the serious nature of the crimes and Edwards's criminal record, the impact of drug dealing on others, and the fact that Edwards committed the offense while on supervised release and used an addict to perpetuate the crimes. The district court's reference to Edwards's codefendant as a victim was a figure of speech referring to her condition as a drug addict. Given the district court's wide discretion to balance the statutory sentencing factors, United States v. Donahue, 959 F.3d 864, 867 (8th Cir. 2020), we hold that Edwards's below-Guidelines sentence is substantively reasonable.

IV.

Accordingly, we affirm the district court's judgment.

_____