# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2780

_____

United States of America

*Plaintiff - Appellee*

v.

John Edward Juneau

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: March 16, 2023
Filed: July 13, 2023

_____

Before SHEPHERD, ERICKSON, and GRASZ, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

John Edward Juneau was convicted by a jury on multiple counts of possessing methamphetamine and firearms. Juneau appeals his conviction, arguing that the district court[1] erred by denying his motions to suppress evidence seized during

---

[1]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota, adopting the report and recommendations of the Honorable

searches of two residences in Columbia Heights and Coon Rapids, Minnesota. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

In June 2018, Juneau and his then-girlfriend, Crystal Bolan, began renting a house in Columbia Heights on a month-to-month tenancy. In November 2018, the city of Columbia Heights revoked their landlord's rental license because the property was not up to code. Soon thereafter, the city posted a notice on the door of the property notifying Juneau and Bolan that they had 45 days to vacate the premises. Before moving out in January 2019, Juneau asked the landlord if he could store some personal items in the garage. The landlord responded, "It's not really my house anymore. If you store stuff, you store stuff."

At the time, Juneau was under investigation by a local narcotics task force for suspected methamphetamine offenses. In January 2019, having learned of Juneau's connection to the Columbia Heights property through public records, task-force detective Paul Bonesteel applied for a warrant to search the property for drugs and other evidence of criminal activity. The search warrant affidavit stated that Detective Bonesteel confirmed Juneau's lease at the Columbia Heights property and was familiar with his "extensive criminal history." The affidavit explained that Detective Bonesteel also received a tip from a confidential informant that Juneau was dealing drugs from the Columbia Heights residence. The informant described the rough location of the residence and described Juneau's appearance. Detective Bonesteel followed up by conducting a trash pull from the garbage cans outside the Columbia Heights residence. He searched four garbage bags and found "multiple clear plastic bags which contained crystal[-]like residue which field[-]tested positive for methamphetamine." Detective Bonesteel also identified at least three exterior surveillance cameras outside the Columbia Heights residence. The day before he

Katherine M. Menendez, then United States Magistrate Judge for the District of Minnesota, now United States District Judge for the District of Minnesota.

-2-

submitted the affidavit, Detective Bonesteel spotted Juneau's car parked near the house.  Finally, the affidavit also described details of Juneau's and Bolan's criminal histories, which included some inaccuracies.  For example, the affidavit incorrectly stated that Juneau had been convicted of unlawful possession of ammunition in 2018 when, in fact, those charges had been dismissed.

A state-court judge issued the search warrant on January 25, 2019, and Detective Bonesteel and other task-force officers executed the warrant on February 1, 2019.  Officers seized methamphetamine, drug paraphernalia, and a cell phone.  Juneau was present during the search, standing near a pair of bib overalls in the garage.  Inside the overalls, officers located three plastic baggies containing methamphetamine.  DNA evidence taken from two of the baggies connected them to Juneau.

After moving out of the Columbia Heights home, Juneau claims to have moved in with his brother in Andover, Minnesota, but he stayed there only occasionally.  Nonetheless, Juneau informed authorities that his brother's house was his new residence, as required by his predatory-offender registration.  Juneau also spent time at a duplex in Coon Rapids, Minnesota.  The duplex was owned by an acquaintance of Juneau and Bolan.  Bolan lived at the property, and Juneau often assisted one of the other tenants in working on motorcycles and cars in the garage and performing other household projects.  The duplex owner recalled Juneau receiving a package at the residence, and he saw Juneau and Bolan coming and going from the garage.

The Coon Rapids residence eventually came to the attention of the same narcotics task force that executed the Columbia Heights warrant.  After officers recovered methamphetamine during an April 2019 search of the Coon Rapids residence, task-force Detective Daniel Neitzel began investigating an individual named Jamie Shore, whom Detective Neitzel believed to be at the center of a local drug-trafficking ring.  Detective Neitzel installed GPS units on Shore's vehicle and tracked numerous stops at the Coon Rapids residence in May and June of 2019.

While surveilling the house in May 2019, Detective Neitzel also noticed a red pickup truck registered to Juneau in the driveway, and he was familiar with Juneau's criminal history and his connection to the Columbia Heights search executed just a few months prior. On July 1, 2019, Detective Neitzel observed Shore leave the Coon Rapids residence and drive to a nearby bar to conduct what Detective Neitzel thought was a drug transaction. This activity led Detective Neitzel to believe that Shore was using the Coon Rapids residence as a hub of drug-trafficking activity.

In July 2019, Detective Neitzel applied for a warrant to search the Coon Rapids house for drugs and other evidence of criminal activity. The search warrant affidavit pointed to Shore's suspected drug-trafficking activity and his connection to the house. Specifically, the affidavit listed Shore's eighteen separate stops at the Coon Rapids residence between May 10, 2019, and June 26, 2019, many of which were at unusual times of the day and for short durations. The affidavit concluded that this activity was "consistent with Jamie Shore using the location as a hub to conduct illegal narcotics sales." The affidavit also noted Juneau's presence at the house and recounted his criminal history. The affidavit finally recounted the suspected drug sale conducted by Shore directly after leaving the Coon Rapids house.

A state-court judge signed the Coon Rapids warrant on July 3, 2019. The warrant authorized a search for drugs, drug paraphernalia, and other indicia of the drug trade, but it did not include language about weapons. Local law enforcement executed the warrant on July 9, 2019. As they did so, officers saw Juneau attempting to leave the house through a downstairs bedroom door. Officers seized $6,000 in cash as well as 37 grams of methamphetamine from the same bedroom. They also searched a detached garage on the property, where they found a motorcycle registered to Juneau as well as several baggies containing roughly 47 grams of methamphetamine in a cabinet. In a safe above the cabinet, officers seized two pistols, loaded magazines, and a gun holster. A DNA sample from the firearms matched to Juneau.

Juneau was indicted by a federal grand jury on two counts of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and (b)(1)(B); one count of possessing and carrying firearms in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); and one count of being a felon in possession of firearms, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Juneau filed several pretrial motions, including motions to suppress evidence seized from the Columbia Heights and Coon Rapids homes, a separate motion to exclude the firearms seized during the Coon Rapids search, and a motion for a Franks[2] hearing.[3]

After conducting an evidentiary hearing on Juneau's motions, the magistrate judge recommended that the district court deny the suppression motions and motion to exclude on the merits and deny the Franks motion as moot. The magistrate judge assumed that Juneau had Fourth Amendment standing to challenge the Columbia Heights and Coon Rapids searches, though she noted that the state of the evidentiary record complicated the standing inquiry. On the Franks motion, the magistrate judge noted the inconsistencies and inaccuracies in the search warrant affidavits but concluded that they did not undermine the issuing judge's finding of probable cause. Finally, the magistrate judge found that the Columbia Heights and Coon Rapids warrants were both supported by probable cause, and that the guns were properly seized under the plain-view exception to the warrant requirement. Juneau filed multiple objections to the magistrate judge's report and recommendation. Without addressing the question of Fourth Amendment standing, the district court considered and rejected each of Juneau's objections and adopted the report and recommendation.

---

[2]Franks v. Delaware, 438 U.S. 154 (1978).

[3]Juneau also filed a motion to suppress the DNA evidence obtained from the firearms seized at the Coon Rapids residence. The magistrate judge recommended denying this motion, and the district court adopted this recommendation without comment. Juneau does not appeal this ruling.

-5-

The case proceeded to trial. A jury convicted Juneau on all counts, and the district court sentenced him to 216 months' imprisonment followed by 5 years of supervised release. Juneau appeals, arguing that the district court erroneously denied his motions to suppress.

II.

The government first argues that we should affirm the district court on the basis that Juneau lacks standing to contest the Columbia Heights and Coon Rapids search warrants. "In an appeal from a denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo." United States v. Allen, 43 F.4th 901, 907 (8th Cir. 2022).

The concept of Fourth Amendment standing is a "useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search." Byrd v. United States, 138 S. Ct. 1518, 1530 (2018). But Fourth Amendment standing "should not be confused with Article III standing." Id. Unlike Article III standing, Fourth Amendment standing is "not a jurisdictional question and hence need not be addressed before addressing other aspects of the merits of a Fourth Amendment claim." Id. Consistent with the scope of the Fourth Amendment's protection, a defendant may challenge an unconstitutional search only if the defendant had a "reasonable expectation of privacy" in the places searched or things seized. Katz v. United States, 389 U.S. 347, 360-61 (1967) (Harlan, J., concurring); accord United States v. Bettis, 946 F.3d 1024, 1027 (8th Cir. 2020). "There is no 'single metric or exhaustive list of considerations,' but a defendant's expectation of privacy must be grounded in property law or understandings that are recognized by society." Bettis, 946 F.3d at 1027 (quoting Byrd, 138 S. Ct. at 1527).

Here, Juneau argues he had a reasonable expectation of privacy in both the Columbia Heights and Coon Rapids residences. Though he had moved out of the Columbia Heights residence, Juneau contends that he had been given "permission

or acquiescence" by his former landlord to keep personal belongings in the garage. Thus, Juneau argues, he "stood in the shoes of the owner" with respect to his access and use of the garage. Appellant Br. 14. As to the Coon Rapids residence, Juneau argues that he was a routine overnight guest and, therefore, had a reasonable expectation of privacy consistent with his usage, citing Minnesota v. Olson, 495 U.S. 91 (1990). The government contends that Juneau had vacated the Columbia Heights residence and had no legally effective permission to store his items in the garage. As to the Coon Rapids residence, the government points to Juneau's own testimony denying that he was a routine overnight guest or that he kept belongings there.

However, because Fourth Amendment standing "need not be addressed before addressing other aspects of the merits," Byrd, 138 S. Ct. at 1530, we need not address these arguments before deciding whether the Columbia Heights and Coon Rapids search warrants were supported by probable cause. See United States v. James, 3 F.4th 1102, 1106 n.3 (8th Cir. 2021) (assuming, without deciding, that defendant had standing to challenge search warrants before deciding whether those search warrants were supported by probable cause); accord United States v. Ross, 964 F.3d 1034, 1040 (11th Cir. 2020) ("Unlike Article III standing . . . Fourth Amendment 'standing' is an ordinary, and waivable, aspect of the merits of a defendant's constitutional challenge."). The magistrate judge assumed Fourth Amendment standing in her report and recommendation, noting that the standing inquiry was "complicated by the state of the evidentiary record." The district court did not address Fourth Amendment standing. Because full consideration of this issue would likely require a more developed factual record, we assume, without deciding, that Juneau has standing to challenge the search warrants before us.

III.

Having assumed Fourth Amendment standing, we now address Juneau's contention that the Columbia Heights and Coon Rapids search warrants were unsupported by probable cause, contrary to the district court's ruling. We review

-7-

the district court's factual findings for clear error and legal conclusions de novo. Allen, 43 F.4th at 907.

In reviewing whether a warrant was supported by probable cause, our role is to ensure that the issuing judge "had a 'substantial basis for concluding that probable cause existed.'" United States v. Johnson, 848 F.3d 872, 876 (8th Cir. 2017) (citation omitted). "Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Gater, 868 F.3d 657, 660 (8th Cir. 2017) (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)). Mindful that "[p]robable cause . . . is not a high bar," Kaley v. United States, 571 U.S. 320, 338 (2014), we pay "great deference" to the issuing judge's determination, Johnson, 848 F.3d at 876 (citation omitted). "When, as here, the issuing court relies solely on an affidavit to determine whether probable cause [exists], only the information 'found within the four corners of the affidavit may be considered.'" United States v. Wells, 347 F.3d 280, 286 (8th Cir. 2003) (citation omitted).

A.

We first consider the Columbia Heights search warrant. Juneau argues that the affidavit exaggerated Juneau's and Bolan's criminal records and relied on stale or imprecise information. Namely, the affidavit stated that Bolan had been convicted of *first-degree* possession of a controlled substance when, in fact, Bolan had two convictions for *fifth-degree* possession of a controlled substance. And the affidavit stated that Juneau had been convicted on possession-of-ammunition charges when, in fact, those charges were dismissed. Further, the affidavit did not include the fact that Juneau had moved out of the Columbia Heights residence even though officers were allegedly aware of Juneau's move.

Discounting those parts of the affidavit, what remains is sufficient to establish probable cause. The trash pull, in particular, strongly supports a finding of probable cause. As we have recognized time and again, "the recovery of drugs or drug

paraphernalia from the garbage contributes significantly to establishing probable cause." United States v. Briscoe, 317 F.3d 906, 908 (8th Cir. 2003); see also United States v. Allebach, 526 F.3d 385, 387 (8th Cir. 2008) (holding that "two plastic bags with cocaine residue, two corners torn from plastic bags, Brillo pads, [and] a film canister with white residue . . . were sufficient to establish probable cause that cocaine was being possessed and consumed in [defendant's] residence" (footnotes omitted)); United States v. Shockley, 816 F.3d 1058, 1062 (8th Cir. 2016) (holding that trash pull identifying "eight small, clear plastic sandwich bags with stretched and torn corners; a small amount of a green leafy substance that tested positive for THC; and eleven plastic gloves . . . was sufficient to support probable cause to search [defendant's] residence for controlled substances"). Indeed, in Briscoe, we held that recovery of drug-related evidence in a trash pull can, in the right circumstances, be "sufficient *stand-alone* evidence to establish probable cause." 317 F.3d at 908.[4]

Here, a trash pull yielded multiple baggies containing methamphetamine residue. On top of that, the affidavit pointed to Juneau's prior controlled substance conviction, a tip from an informant that Juneau was dealing methamphetamine, and surveillance linking Juneau's vehicle to the Columbia Heights residence. Altogether, this evidence provided the issuing judge a substantial basis to find that probable cause existed to search the Columbia Heights residence for evidence of drug trafficking. See, e.g., United States v. Thurmond, 782 F.3d 1042, 1045 (8th Cir. 2015) (holding that recovery of two marijuana roaches and other marijuana blunt materials in trash pull, along with defendant's "earlier arrest for possession of

---

[4]At oral argument, defense counsel argued that the affidavit did not provide enough facts linking Juneau to the trash pull. However, officers sought a warrant to search *the Columbia Heights residence*—not Juneau himself—for evidence of drug-trafficking crimes. While Juneau's connection to the Columbia Heights residence is relevant to establishing probable cause, it is not necessary. Cf. United States v. Tellez, 217 F.3d 547, 550 (8th Cir. 2000) ("[T]here must be evidence of a nexus between the contraband *and the place to be searched* before a warrant may properly issue." (emphasis added)).

controlled substance[s] and his juvenile history with controlled substances," was sufficient for finding of probable cause). Thus, the district court did not err by denying Juneau's motion to suppress the evidence found pursuant to the Columbia Heights warrant.[5]

## B.

We next consider the Coon Rapids warrant. Juneau takes issue with several inaccurate or imprecise details in the affidavit. He contends that probable cause was undermined by the statement that, during the Columbia Heights search, "an ounce of methamphetamine was recovered from a pair of bibs belonging to Juneau," though investigators never confirmed that the bibs were actually owned by Juneau. Further, Juneau contends that the affidavit misleadingly represented that Juneau was living at the Coon Rapids residence, despite contradictory information from Juneau's brother that he was living in Andover.

Notwithstanding these asserted inaccuracies, we conclude that the affidavit provided the issuing judge a "substantial basis for concluding that probable cause existed" to search the Coon Rapids residence for evidence of drug trafficking. Johnson, 848 F.3d at 876 (citation omitted). The affidavit relied heavily on the investigation of Jamie Shore, a known drug dealer. Detective Neitzel linked Shore

---

[5]At oral argument, defense counsel insisted that Juneau was also appealing the district court's denial of his motion for a Franks hearing. However, Juneau's brief only discusses the denial of his motions to suppress. See Appellant Br. 11, 16-17. Thus, we deem the Franks argument waived. See United States v. Williams, 39 F.4th 1034, 1045 n.3 (8th Cir. 2022) (noting that issues not meaningfully argued by Appellant in opening brief are waived). Even if we were to consider the Franks argument, Juneau could not show that the district court abused its discretion by denying Juneau's motion for a Franks hearing because, as demonstrated above, Juneau has not shown that "if the false information is excised (or the omitted information is included), the [Columbia Heights] affidavit no longer establishes probable cause." United States v. Arnold, 725 F.3d 896, 898 (8th Cir. 2013) (citing Franks v. Delaware, 438 U.S. 154, 155-56 (1978)). The same goes for the Coon Rapids warrant, as discussed below.

to the Coon Rapids residence and tracked eighteen visits to the residence, several of which were at night and lasted only a few minutes. Detective Neitzel believed, based on his training and experience, that these visits were consistent with drug-trafficking activity. See United States v. Johnson, 528 F.3d 575, 579 (8th Cir. 2008) (finding probable cause based, in part, on investigation linking a known drug dealer to an apartment and "a great deal of short-term traffic to the apartment, consistent with narcotics trafficking"). The affidavit also noted the presence of Juneau's red truck at the Coon Rapids residence and Juneau's criminal history. See United States v. Turner, 953 F.3d 1017, 1020 (8th Cir. 2020) (finding that defendant's prior drug convictions and the presence of his car at the place to be searched contributed to finding of probable cause). Further, the affidavit cited what investigators believed to be a drug transaction conducted by Shore immediately after he left the Coon Rapids residence one evening, though this was later proven inaccurate. See United States v. Flores, 888 F.3d 537, 544 (1st Cir. 2018) (finding probable cause based, in part, on undercover officer "witness[ing] what he reasonably believed to be a hand-to-hand drug buy"). Based on the "totality of the circumstances," the details cited in the affidavit are "sufficient to create a fair probability that evidence of a crime [would] be found" at the Coon Rapids residence. Johnson, 848 F.3d at 876.

Even if the Coon Rapids affidavit was imperfect, perfection is not required for a search warrant to survive appellate review. See Gates, 462 U.S. at 236 ("[A]ffidavits 'are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area.'" (citation omitted)). Accordingly, the district court did not err by denying Juneau's motion to suppress the evidence found pursuant to the Coon Rapids warrant.

IV.

Finally, Juneau contends that the district court should have suppressed the firearms found at the Coon Rapids residence because the search warrant did not

-11-

include firearms in its list of things to be seized at the Coon Rapids residence, as the Fourth Amendment requires. See U.S. Const. amend. IV.

However, the warrant requirement has exceptions, and one such exception applies here. Under the plain-view doctrine, law enforcement may "seize an object without a warrant if '(1) the officer lawfully arrived at the location from which he or she views the object, (2) the object's incriminating character is immediately apparent, and (3) the officer has a lawful right of access to the object itself.'" United States v. Saddler, 19 F.4th 1035, 1041-42 (8th Cir. 2021) (citation omitted). Juneau only challenges the second factor—whether the "incriminating character" of the firearms was "immediately apparent" to the officers executing the search at the Coon Rapids residence. We have held that "[a]n item's incriminatory nature is immediately apparent if the officer at that moment had probable cause to associate the property with criminal activity." United States v. Figueroa-Serrano, 971 F.3d 806, 811 (8th Cir. 2020) (citation omitted).

Here, the incriminating character of the firearms was immediately apparent to the officers executing the Coon Rapids search warrant. Officers had just located roughly 25 grams of methamphetamine in a cabinet inside a garage at the Coon Rapids residence. They then found the firearms in a safe on top of the cabinet. We have held that when firearms are found directly adjacent to controlled substances, their incriminating nature is immediately apparent. See United States v. Hughes, 940 F.2d 1125, 1127 (8th Cir. 1991) ("Cocaine is contraband, and the officers had probable cause to associate the gun with criminal activity."); United States v. Rodriguez, 711 F.3d 928, 936 (8th Cir. 2013) ("[T]he incriminating nature of the guns was immediately apparent, as they were in close proximity to a plethora of drugs and drug-related equipment." (citation omitted)).

Further, the officers searching the home knew of Juneau's criminal background and his status as a felon, see R. Doc. 77, at 166 ("[W]e knew of Mr. Juneau's history."), which would make his possession of the firearms a crime. See Rodriguez, 711 F.3d at 936-37 ("[T]he incriminating nature of the guns was

-12-

immediately apparent . . . also because the officers were aware of [defendant's] prior criminal record, likely making him ineligible to possess the firearms." (citation omitted)); United States v. Banks, 514 F.3d 769, 776 (8th Cir. 2008) ("A gun, possessed by a felon, is always evidence of a crime."). The firearms were found in the garage near Juneau's motorcycle, and, as the warrant explained, Juneau's truck had been observed at the Coon Rapids residence. Thus, the officers had probable cause to believe the firearms belonged to Juneau. Because the firearms fit comfortably within the plain-view exception to the warrant requirement, the district court did not err in denying Juneau's motion to suppress.

V.

For the foregoing reasons, we affirm the judgment of the district court.

_____