# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1368
_____

United States of America

*Plaintiff - Appellee*

v.

Freeman Whitfield, IV, also known as Mr. Furley, also known as Furl, also known as Farley, also known as Mr. Farley, also known as Furley Beam, also known as Furley

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: February 10, 2025
Filed: June 18, 2025
[Published]
_____

Before SMITH, KELLY, and KOBES, Circuit Judges.
_____

PER CURIAM.

Freeman Whitfield IV appeals the district court's[1] denial of his motion to suppress evidence and his motion to sever his charged counts. We affirm.

_____

[1]The Honorable Matthew T. Schelp, United States District Judge for the Eastern District of Missouri.

I. *Background*

In 2018, Detective James Gaddy of the St. Charles County, Missouri Police Department was investigating a large-scale drug distributor in the St. Louis area named Guy Goolsby. Detective Gaddy applied for and received wiretap authorization for Goolsby's cell phone. The wiretap information allowed investigators to intercept Goolsby's calls and those of two other individuals who sold fentanyl pills. Whitfield was one of those individuals. In 2019, investigators applied for wiretap authorization of Goolsby's other cell phones. Soon after, Goolsby was intercepted directing Whitfield and another individual to retrieve drugs. In May 2019, the government indicted Goolsby, Antonio Boyd, and 13 others for their involvement in a drug distribution conspiracy. Boyd cooperated with investigators and identified Whitfield as a "lower-level distributor and 'shooter'[2] for Goolsby's operation." R. Doc. 2, at 6. In December 2019, investigators learned that a drive-by shooter had shot Boyd and his friend while they were standing in Boyd's front yard. The shots killed Boyd and injured his friend. The friend identified the shooter as driving a silver sedan. In addition, several witnesses reported a silver sedan speeding away from the house. Boyd's brother, as he headed to Boyd's house shortly after the shooting, saw a silver sedan. He identified the driver as Whitfield. Investigators collected ammunition from the shooting scene that matched the ammunition found in Boyd's body.

Three days later, investigators intercepted a call between a suspected drug distribution conspirator and Whitfield. Although the conversation was intentionally coded, the other suspect asked Whitfield if he knew Boyd's brother. The caller told Whitfield that Boyd's brother said he saw Whitfield at the shooting scene. Whitfield responded that Boyd's brother was not even at the house. Whitfield's response implied that he may have been present at the scene. Based on this conversation, investigators believed that they were referencing the Boyd murder. Whitfield's

---

[2]A "shooter" is a term used to describe "an armed enforcer" for a drug distribution organization. Appellee's Br. at 4.

asserted knowledge and his conspiracy role as a shooter implicated Whitfield as the possible assailant. Once investigators obtained Whitfield's phone number, they applied for and received a warrant to obtain cell tower data to determine the historical locations of the phone on the days surrounding the murder. According to the historical data, Whitfield was moving between cell towers on a direct route to Boyd's house on the day of the murder and quickly departed the area immediately after.

Investigators continued to document Whitfield's involvement in the drug conspiracy from January to July 2020. A law enforcement informant identified Whitfield selling fentanyl on several occasions during that period. However, Whitfield suspected the informant's cooperation and subsequently cut off communication and changed his phone number. In March 2021, investigators obtained Whitfield's new phone number and obtained digital geolocation information. The phone was located in an apartment complex on Tributary Drive. From March to April 2021, investigators conducted physical surveillance of Whitfield that revealed his regular departure early each morning from the Tributary Drive apartment to the Union Boulevard apartment. He would carry the same bag with him each time. He would then depart the Union Boulevard apartment, enter his rental vehicle, briefly meet with other vehicles at a different location, and then return directly to the Union Boulevard apartment. The investigators believed that this activity was consistent with drug sales and that the apartments were likely used for stashing drugs and drug proceeds. Investigators installed a closed-circuit video recording system in the public area of the Tributary Drive apartment and recorded Whitfield entering apartment 517.

On April 28, 2021, Detective Gaddy applied for search warrants for both the Union Boulevard apartment and the Tributary Drive apartment. The warrants were accompanied by identical affidavits detailing the information outlined above. The warrants stated that the purpose of the search was to find "[a]rticles of personal property tending to establish and document" Whitfield's "use of a firearm in furtherance of a drug trafficking crime . . . resulting in death," as well as evidence

of "possession with intent to distribute narcotics." R. Doc. 68, at 12. The affidavits also contained the following statement:

> Furthermore, although a subject may discard a particular weapon used in a crime especially if the shooting resulted in death, based on prior experiences, I am aware subjects often fail to discard the left over ammunition they used in a crime. Based on my training and experience, I believe that WHITFIELD may still be in physical possession of predecessor telephone #1 (telephone WHITFIELD was in possession of at time of homicide), ammunition, and/or other evidence which was used during the homicide and shooting on December 9, 2019.

*Id.* at 24 (bold omitted).

The magistrate judge approved and signed the search warrants. Investigators executed both warrants simultaneously on May 4, 2021. Investigators encountered Whitfield at the Tributary Drive apartment and detained him. During the search of the Tributary Drive apartment, investigators found and seized firearms, ammunition, drug proceeds, and cell phones. The concurrent search of the Union Boulevard apartment produced drugs, firearms, a ballistic vest, and suspected drug proceeds. In Whitfield's stash of ammunition was a partially filled box of the exact ammunition that officers found at the scene of Boyd's murder.

A grand jury indicted Whitfield with seven counts related to the events in December 2019 and summer 2020. Count I alleged that Whitfield conspired to possess and distribute controlled substances between March 8, 2018, through May 4, 2021, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Count II alleged that Whitfield, on or about December 9, 2019, discharged a firearm in furtherance of a drug trafficking crime and that the violation resulted in a death, in violation of 18 U.S.C. §§ 924(c)(1)(A) and (j)(1). Count III alleged that Whitfield, on or about December 9, 2019, knowingly possessed one or more firearms in furtherance of drug trafficking crimes, in violation of § 924(c)(1)(A). Count IV alleged that on or about May 4, 2021, Whitfield possessed with intent to distribute more than 400 grams of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Count V alleged

that on or about May 4, 2021, Whitfield knowingly possessed one or more firearms in furtherance of drug trafficking crimes, in violation of 18 U.S.C. § 924(c)(1)(A). Count VI and VII alleged that Whitfield knowingly possessed firearms and ammunition knowing he had previous felony convictions, in violation of §§ 922(g)(1) and 924(e)(1).

Prior to trial, Whitfield filed several pretrial motions, including a motion to sever Counts II and III from the remaining counts, a motion to suppress physical evidence from the search of the residences, and a motion to suppress electronic surveillance evidence. Following a hearing on the motions, the magistrate judge issued an order and recommendation advising that all of Whitfield's motions be denied. Whitfield objected, but the district court overruled the objection and denied his pretrial motions. The case proceeded to a jury trial, and the evidence that Whitfield sought to suppress was admitted at trial and presented to the jury. Whitfield was found guilty on all counts and sentenced to life. Whitfield timely filed this appeal.

## II. *Discussion*

On appeal, Whitfield contends that the district court erred in denying his motion to suppress and his motion to sever Counts II and III from the remaining counts.

### A. *Motions to Suppress*

Whitfield appeals the denial of his motions to suppress the physical evidence seized upon the search of his two apartments and the electronic surveillance evidence obtained by investigators after receiving a warrant to wiretap various devices. We review the denial of a motion to suppress under a "mixed standard of review." *United States v. Charles*, 125 F.4th 904, 909 (8th Cir. 2025) (quoting *United States v. Williams*, 777 F.3d 1013, 1015 (8th Cir. 2015)). "[W]e review the district court's factual findings for clear error and its legal conclusions de novo." *Id*. (alteration in original) (quoting *United States v. Juneau*, 73 F.4th 607, 613 (8th Cir. 2023)).

### 1. *Physical Evidence*

Whitfield argues that the district court erred in denying his motion to suppress the physical evidence collected at his apartments because the affidavits supporting the warrant application lacked probable cause. More specifically, Whitfield argues that the investigators' suspicion of drug activity was linked to documented drug transactions occurring too remotely in time. Thus, the affidavit's assertion that Whitfield used the apartments in relation to drug trafficking lacked sufficient evidence. Additionally, he argues that the affidavits failed to show why evidence related to the 2019 murder would be found in either residence.

When evaluating whether a warrant affidavit is sufficient to establish probable cause, "our role is to ensure that the issuing [court] had a substantial basis for concluding that probable cause existed." *United States v. Mayo*, 97 F.4th 552, 555 (8th Cir. 2024) (alteration in original) (quoting *Juneau*, 73 F.4th at 614). "Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (internal quotation marks omitted). "Probable cause is 'not a high bar.'" *Charles*, 125 F.4th at 910 (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)).

We hold that the affidavit supporting the warrant application was sufficient to establish probable cause to search the two residences. The affidavit set forth concrete evidence and observations regarding Whitfield's involvement in the drug conspiracy. Investigators had intercepted confirmed drug transactions by Whitfield back in 2020. Later, when the officers no longer had an informant working with Whitfield, they relied on physical surveillance. There was no evidence that Whitfield conducted his drug transactions inside either residence. But the affidavits included evidence showing Whitfield repeatedly leaving one residence to travel to the other with the same bag. He would engage in short-term suspected drug transactions with other vehicles and then return to the Union Boulevard apartment before heading back to the Tributary Drive apartment. Whitfield's habits were consistent with using the residences as stash houses for drugs and drug proceeds. These facts established a reasonable probability that evidence of drug possession and distribution would be

found at the residences. The transactions' occurrences outside the home did not prevent the house from being connected to the drug transactions. The residences stored the drugs, drug proceeds, possible weapons, and other drug paraphernalia.

Similarly, the affidavit contained evidence concerning Whitfield's suspected involvement in Boyd's murder. Whitfield had been identified as the "shooter" for the conspiracy, *see* R. Doc. 2, at 6, and investigators had reason to suspect that he committed the murder based on geolocation data and intercepted conversations. The lapse of time between the murder and the warrant to search the apartments did not invalidate the affidavit. The investigator's affidavit included a statement that suspects "often fail to discard the left-over ammunition they used in a crime." R. Doc. 76, at 7. Thus, investigators believed that Whitfield might still be in possession of an old phone from the time of the murder, as well as the ammunition that was used during the murder. Viewed in totality, the affidavits were supported by a reasonable probability of discovering evidence of the Boyd murder. Therefore, the magistrate judge had a sound basis for concluding that probable cause existed to search the Union Boulevard apartment and the Tributary Drive apartment.

Additionally, the district court overruled Whitfield's objection to the magistrate judge's "finding that it was objectively reasonable for law enforcement officers executing the search warrants to rely in good faith on the issuing judge's findings of probable cause." R. Doc. 76, at 9–10 (citing *United States v. Leon*, 468 U.S. 897, 905 (1968)). On appeal, Whitfield did not contest this finding in his opening brief. He also does not allege that the affidavit contained any facial deficiencies, that the issuing judge abandoned its judicial role, or that the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (internal quotations marks omitted). Whitfield, thus, does not argue, and the record does not show, that it was "entirely unreasonable" for the officers to believe that the warrant application established probable cause. *Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012) (internal quotation marks omitted). Accordingly, the district court did not err in denying the motion to suppress the physical evidence found at the two residences.

-7-

## 2. *Wiretap Evidence*

The affidavits supporting the search warrant for Whitfield's residences highlighted intercepted conversations connecting him to the drug conspiracy and the Boyd murder. Whitfield argues that this wiretap evidence should have been suppressed. He contends that the affidavits supporting the multiple wiretap warrants failed to assert that "other investigative procedures ha[d] been tried and failed" or "reasonably appear[ed] to be unlikely to succeed if tried or [would] be too dangerous" as required under 18 U.S.C. § 2518(1)(c). Whitfield argues that the warrant affidavits illustrate the investigator's prior success using other investigative techniques rather than failure. He contends that the warrants should not have been granted because they were unneeded.

Section 2518 sets forth the procedure for authorizing the interception of wire, oral, or electronic communications. Each application must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). This "is known as the 'necessity' requirement." *United States v. Armstrong*, 60 F.4th 1151, 1161 (8th Cir. 2023) (quoting *United States v. Merrett*, 8 F.4th 743, 749 (8th Cir. 2021)). "To satisfy this requirement, the government need not 'exhaust every available investigative technique.'" *Id.* (quoting *Merrett*, 8 F.4th at 749). Rather, the government must establish "that conventional investigatory techniques have not been successful in exposing the full extent of the conspiracy and the identity of each coconspirator." *Id.* (quoting *Merrett*, 8 F.4th at 749). "We will affirm a district court's finding of necessity unless substantial evidence does not support the determination, the determination 'evolve[d] from an erroneous view of the applicable law,' or 'we, after reviewing the whole record, have a definite and firm conviction that the district court made a mistake.'" *Id.* (alteration in original) (quoting *Merrett*, 8 F.4th at 749).

Here, the affidavits provided a detailed list of numerous investigative techniques and explained why they were not fully successful, would not be

successful if tried, or were too dangerous to try. The investigators' partial success with some investigatory methods does not win the day for Whitfield. The limitations of those methods were thoroughly explained in the affidavit. *See id*. On this record, the district court did not clearly err when it denied the motion to suppress upon a finding that the government had satisfied the necessity requirement.

### B. *Motion to Sever Counts II and III*

Lastly, Whitfield argues that the district court erred in denying his motion to sever Counts II and III from the remaining counts because the conduct charged in Counts II and III was a separate event that occurred over a year prior to the remaining conduct charged. Accordingly, Whitfield argues that unfair prejudice resulted from this joinder because it permitted admission of evidence of unrelated wrongdoing that improperly influenced the jury.

"We review a district court's denial of a motion to sever for an abuse of discretion." *United States v. May*, 70 F.4th 1064, 1071 (8th Cir. 2023) (internal quotation marks omitted). The district court may sever joined charges if the defendant demonstrates that joinder prejudices the defendant. *See United States v. Goodhouse*, 81 F.4th 786, 791 (8th Cir. 2023). "A defendant is prejudiced when deprived of an appreciable chance for an acquittal, a chance that the defendant would have had in a severed trial." *Id.* (internal quotation marks omitted). However, "a defendant does not suffer any undue prejudice by a joint trial if the evidence is such that one crime would be probative and admissible at the defendant's separate trial of the other crime." *Id.* (internal quotation marks omitted). To satisfy the "real" prejudice standard, a defendant must show "that the jury will be unable to compartmentalize the evidence," and "[t]he defendant carries a heavy burden in making this showing." *United States v. Sandstrom*, 594 F.3d 634, 644 (8th Cir. 2010) (internal quotation marks omitted). Further, "the risk of prejudice posed by joint trials is best cured by careful and thorough jury instructions." *United States v. Delpit*, 94 F.3d 1134, 1144 (8th Cir. 1996).

Here, the district court agreed with the magistrate judge that Counts II and III were sufficiently related to the other offenses because they were "specifications of the multi-drug trafficking conspiracy." R. Doc. 68, at 20; *see also* R. Doc. 76, at 4. In other words, the evidence presented demonstrated that Boyd was cooperating with investigators to give information about the Goolsby drug conspiracy. Shortly after Boyd began cooperating, Whitfield, a "shooter" for the conspiracy, *see* R. Doc. 2, at 6, likely shot and killed him. As the magistrate judge pointed out, "[w]hen violence is part of the conspiracy's *modus operandi*, charges stemming from that violence are properly joined with conspiracy charges." R. Doc. 68, at 21 (quoting *Delpit*, 94 F.3d at 1143). Therefore, the discharge of the weapon to kill Boyd and injure his friend was sufficiently connected to the purposes of the conspiracy.

Moreover, the 18-month gap between the murder and the drug charges did not vitiate the connection between the drug conspiracy and the shooting given the drug conspiracy's timespan and the likelihood of overlapping evidence. *See United States v. Rodgers*, 732 F.2d 625, 629 (8th Cir. 1984) (upholding joinder of charges despite a 20-month time lapse between charges); *see also United States v. Hastings*, 577 F.2d 38, 40 (8th Cir. 1978) (upholding joinder of counterfeiting offenses covering a two-year period).

Finally, Whitfield has failed to demonstrate any resulting prejudice. Here, Whitfield cannot show that evidence of his involvement in the drug conspiracy and possession of drugs, weapons, and ammunition would have been inadmissible in a severed trial for Counts II and III. The evidence likely would have been admissible to prove motive, identity, and absence of mistake under Federal Rule of Evidence 404(b). His involvement in the drug conspiracy is intertwined with the motive for the shooting. Moreover, the district court's jury instructions contained separate independent verdict directors for each count and instructed the jury to "[k]eep in mind that each count charges a separate crime" and that they "must consider each count separately and return a separate verdict for each count." R. Doc. 125, at 15. Whitfield is unable to show that the evidence would have otherwise been excluded, that the jury instructions were insufficient, or that exclusion of that evidence

deprived him of an appreciable chance for an acquittal on Counts II and III. Therefore, the district court did not abuse its discretion in denying the motion to sever Counts II and III from the remaining counts.

### III. *Conclusion*

For the foregoing reasons, we affirm the district court's judgment.

_____